Mary A. CRAIG, Appellant,

v.

Casey McBRIDE, Appellee.

No. 5358.

Supreme Court of Alaska.

Jan. 29, 1982.

Bruce Horowitz, Alaska Legal Services Corp., Juneau, for appellant.

A. Lee Petersen, A. Lee Petersen, Inc., Anchorage, for appellee.

Deborah Holbrook, Juneau, guardian ad litem.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This is a custody dispute. The mother and the guardian ad litem [1] appeal from the decision of the superior court which granted

1. In *Veazey v. Veazey*, 560 P.2d 382 (Alaska 1977), we discussed at length the obligation of a guardian ad litem to be a vigorous advocate on behalf of the child's interests. We recognized that oftentimes the guardian ad litem would argue in favor of one parent. Here, the guardian ad litem favored an award of custody to the mother.

primary custody of Aurora Craig-McBride, a minor child, to her father. We cannot affirm the decree in this case because the award of custody to the father may in part derive from consideration of impermissible criteria. Accordingly, we remand this matter for further proceedings.

We need only briefly set forth the facts of this case.[2] The claimants, Mary Craig Bird and Casey McBride, are the natural parents of Aurora. The parties lived together in Skagway, Alaska for much of the period between Spring 1975 and January 1977. Aurora, now five and one-half years old, was born March 7, 1976.

At the time of trial, the mother resided in Juneau with her husband, whom she married in March 1978, and her daughter Alim, Aurora's older half sister. The father continued to reside in Skagway, where he shared a house with two other single men. By all accounts, he is a respected community leader. The court, the guardian ad litem, and the child care specialist agreed that either parent was capable of giving Aurora adequate care.

Much of the evidence concerned the relative instability of the parties. Both had parented other children out of wedlock. Both had been involved in numerous intimate relationships. The principal distinguishing feature in terms of stability was that the father had worked diligently to establish a settled home in Skagway, while the mother frequently moved from city to city without establishing a stable home environment.

The court properly sought to identify the best interests of Aurora by reference to the factors set forth in AS 09.55.205.[3] As is the case in many custody disputes, each parent had unique attributes which militate in favor of an award of custody. The court determined that the father could better provide for the physical and mental needs of Aurora, while the mother could better provide for Aurora's emotional and social needs. With respect to the other factors delineated in AS 09.55.205, the court determined that the claimants were equally desirable. On balance, the court concluded that the father's "relatively more stable circumstance in the community of chosen residence, his economic abilities, and his generally better disciplined management of his life's affairs makes him the more capable of reliably meeting the needs [of the child] indicated in the future." Accordingly, the court awarded custody to the father.[4]

Custody disputes are among the most difficult matters which confront a trial judge. As a consequence, this court has often noted that trial courts enjoy wide discretion in resolving custody disputes. *Bonjour v. Bonjour*, 566 P.2d 667 (Alaska 1977); *Horutz v. Horutz*, 560 P.2d 397 (Alaska 1977); *Horton v. Horton*, 519 P.2d 1131 (Alaska 1974). Our role upon review is restricted. This court determines only if the trial court abused its discretion by considering improper factors in making its determination, by failing to consider statutorily-mandated factors, or by assigning too great a weight to some factors while ignoring others. *Johnson v. Johnson*, 564 P.2d 71, 74 (Alaska

**2.** This court has properly recognized that it is often undesirable to provide in our published opinions a detailed account of the purported misconduct of parties in a custody dispute. *Britt v. Britt*, 567 P.2d 308, 309 n.1 (Alaska 1977).

**3.** In pertinent part, AS 09.55.205 provides:

The court shall determine custody in accordance with the best interests of the child. Neither parent is entitled to preference as a matter of right in awarding custody of the child. In determining the best interests of the child the court shall consider all relevant factors including:

(1) the physical, emotional, mental, religious and social needs of the child;
(2) the capability and desire of each parent to meet these needs;
(3) the child's preference;
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and his other parent.

**4.** The mother was awarded liberal visitation rights, including summer vacations.

1977), *cert. denied*, 434 U.S. 1048, 98 S.Ct. 896, 54 L.Ed.2d 800 (1978); *Horton v. Horton*, 519 P.2d 1131 (Alaska 1977); *see Deivert v. Oseira*, 628 P.2d 575 (Alaska 1981).

It is apparent that the deciding factor in this case was the court's assessment of the relative stability of the parties. For that reason, the principal question raised on appeal is whether the court's determination that the father offered a more stable environment reflected only the consideration of permissible factors.

Concluding that the father had "better disciplined management of life's affairs," the court contrasted the instability which the mother had exhibited:

> I am concerned about the history of the mother with respect to the number of different living situations she has moved into in recent years, and the lack of stability in terms of fixing a home and a place the child might know as a stable home. Although it is true that at the time of trial the [mother] appeared to be in a satisfactory marriage relationship, her husband, Tracy Bird, having testified, nevertheless the extent to which she has moved about, *borne children out of wedlock and demonstrated an instability in terms of place or relationship* makes award of custody to her less desirable than to the father at this time. [Emphasis added.]

The relevant portions of the Findings of Fact, drafted by the father's counsel and signed by the court, roughly parallel these statements:

In contrast, the mother, though recently married, has shown an unstable work history and a life style characterized by frequent moves and few ties. *The child which is the subject of this action is the third child born to the [mother] out of wedlock.* Based upon the extent to which she has moved about, *borne children out of wedlock, and demonstrated instability in terms of place or relationship* an award of custody to her is less desirable than to the father. [Emphasis added.]

■ We conclude that the court's reference to the fact that the mother had borne children out of wedlock and demonstrated an instability in terms of relationships was improper. At best, such comments subjectively tainted the court's decision; at worst, they suggest that the court interjected impermissible factors in the course of its deliberations. *See Carle v. Carle*, 503 P.2d 1050 (Alaska 1972).[5]

■ Viewed in context, it is evident that the court was more generally concerned with the respective stability of the claimants, not their sexual conduct. Clearly, stability is a proper consideration.[6] Thus, the fact that the father had lived in Skagway a number of years, obtaining the broad respect of the community, was undeniably relevant. In the same vein, the fact that the mother had only recently attempted to create a stable home environment was also entitled to consideration. Indeed, we do not preclude the court from determining on remand that factors such as these if the evidence shows that they still exist and are still to be given the same relative weight, are dispositive.[7]

---

5. In *Carle* the trial court opined that the native way of life inevitably will succumb to the dominant Caucasian, urban culture. We reversed the court's award of custody to the mother, who lived in an urban city, out of concern that the court may have awarded custody to the mother to facilitate the child's adoption of urban culture. We noted that "it is not the function of our courts to homogenize Alaskan society." 503 P.2d at 1055.

6. *See* AS 09.55.205(5).

7. We caution trial courts, however, that it is a parent's present ability to provide for the needs of the child which is at issue, not a parent's

past. *See In re Mann*, 293 N.W.2d 185, 190 (Iowa 1980).

Of course, past events may at times illuminate a parent's present status. In the present case, the mother had only been married for one year at the time of trial. Notwithstanding that her marriage had a profound stabilizing influence, we do not think the trial court erred in considering that prior to her marriage the mother had failed to establish a stable home or sense of community. It follows, though, that the stability of the mother's home during the pendency of this appeal will undoubtedly affect whether the instability noted at the original proceeding remains relevant in assessing her

Yet, we cannot countenance the court's reference to the mother's sexual conduct. Whether intended as condemnatory of the mother's sexual conduct or only as indicative of the mother's unstable life style, our concern is that the mother's bearing of children out of wedlock or her instability in terms of relationships should be determinative only were such conduct to adversely affect the child or the mother's parenting abilities. As we stated in *Britt v. Britt,* "evidence of the lifestyle, habits, or character of a custody claimant is relevant only to the extent that it may be shown to affect the person's relationship to the child." 567 P.2d 308, 311 (Alaska 1977); *see Bonjour v. Bonjour,* 566 P.2d at 669; *Horutz v. Horutz,* 560 P.2d at 401. The record in the present case offers scant evidence of any adverse effect resulting from the mother's conduct.[8]

■ The present case cogently illustrates that a court's reference to such factors as a parent's sexual conduct oftentimes intimates the court's denigration of a parent's chosen life style. To avoid even the suggestion that a custody award stems from a life style conflict between a trial judge and a parent, we reiterate that trial courts must scrupulously avoid reference to such factors absent evidence of an adverse effect to the parent-child relationship.

A second issue raised on appeal is whether it was error for the trial court to separate Aurora from her half sister Alim without articulating "compelling" or "necessary" reasons why such a separation was in Aurora's best interest. We address the governing legal principles in order to offer guidance to the trial court.

This court has often embraced the proposition that it is desirable to not separate siblings in the course of custody disputes. *Nichols v. Nichols,* 516 P.2d 732, 736 (Alaska 1973); *Rhodes v. Rhodes,* 370 P.2d 902, 903 (Alaska 1962); *see Wetzler v. Wetzler,* 570 P.2d 741 (Alaska 1977).[9] Divorces and custody disputes are traumatic enough without needlessly severing sibling relationships.

Yet our concern for maintaining sibling relationships has not been transformed into a rigid rule to govern all situations. It is simply inappropriate to resolve custody disputes by application of rigid legal maxims.[10] In *Nichols v. Nichols* we articulated a more flexible approach:

> [C]onsideration should be given to the desirability of not separating the children unless their welfare clearly requires such a course. As in other facets of the difficult problems confronting a trial judge in custody matters, there is no hard and fast rule. The question of whether or not it is necessary to separate children must depend upon the facts and circumstances of each particular case.

516 P.2d at 736 [footnote omitted.]

■ Contrary to the mother's assertion, the *Nichols* standard does not require a showing of "necessary" or "compelling" reasons in order for a trial court to separate siblings. Rather, we prefer to accord trial judges the necessary discretion to best respond to the myriad of factual settings which will invariably arise in custody matters, at all times cognizant that it is the best interests of the child which is the paramount consideration. Though maintaining sibling relationships will typically be in the best interests of the child, cases will undoubtedly arise where the best interests of the child dictate otherwise.[11]

present ability to offer a stable home environment.

8. The court stated, "I am not so concerned about the sexual activities of either the mother or the father, about which there was a good deal of testimony. I don't think that those activities go particularly to show the inability of the parent to provide the needs of the child."

9. The fact that this case involves half sisters has no bearing with respect to "the desirability of keeping the children of the family together

so that they may enjoy the normal conditions of childhood of growing up together as brothers and sisters." *Rhodes v. Rhodes,* 370 P.2d at 903; *see Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157, 161 (1980).

10. *See, e.g., Johnson v. Johnson,* 564 P.2d 71, 74 (Alaska 1977).

11. The present case is illustrative. Aurora had been separated from Alim for substantial lengths of time. The court determined that the

The jurisdictional posture of the present case exemplifies why it would be inappropriate to accord undue weight to the desirability of keeping siblings together. Alim, Aurora's older half sister, is not before the court. Were our policy in regard to keeping siblings together to override all other indications of the child's best interest, a parent with a child who is either a step- or half- sibling of the child in dispute would invariably obtain custody. Such a result does not comport with the fundamental premise that trial courts enjoy wide discretion in ascertaining, by reference to AS 09.55.205, the best interests of the child.

■ A final matter merits discussion. An inordinate amount of time has passed—more than two years—since the trial court announced its decision to award custody to the father.[12] On remand, the trial court must again assess whether an award of custody to either parent would, *inter alia*, better provide continuity and stability for Aurora. AS 09.55.205(5). Pursuant to the terms of the original decree, Aurora has spent substantially more time with her father during these intervening two years.[13] For the trial court to consider this period theoretically penalizes the mother, the party prevailing on appeal. We are convinced, though, that in this context we must depart from the symmetry of common law appellate remedies. The central focus of custody disputes is the best interest of the child, not the parents. It would be anomalous indeed

to preclude a trial court from assessing the effect of severing a child from an environment which had been established over the course of several years.[14] Thus, on remand the trial court may consider the quality and duration of the time which Aurora spent with each parent during the pendency of this appeal.[15]

In conclusion, we cannot affirm the decree in this case because the court improperly made reference to factors which should not have influenced the custody determination. We therefore reverse and remand for further proceedings not inconsistent with the standards set forth in this opinion.

REVERSED and REMANDED.

RABINOWITZ, Chief Justice, concurring.

I agree with the majority's ruling that the superior court's custody award cannot stand because the trial court impermissibly considered the mother's sexual liaisons, notwithstanding the dearth of evidence demonstrating that this conduct had a detrimental impact on the child or on the parent-child relationship. I cannot emphasize too strongly that trial judges must guard against injecting socialized, stereotyped assumptions and misconceptions into custody decisions.[1] Nevertheless, I am compelled to file this separate opinion because I believe the majority has fallen prey to the same kinds of stereotyped views for which the superior court's custody award is being reversed.

---

sibling relationship was not critical for Aurora's social development. Ample evidence, such as the testimony of the child care specialist, supported this view.

12. After the trial concluded in June 1979, almost four months passed before the court announced its decision. An additional six months passed before the court entered the Final Decree. We cannot admonish courts too strongly that custody disputes should be resolved as expeditiously as possible. Protracted litigation can only prove deleterious to the child, and thus render the court's already difficult task even less manageable.

13. We of course do not presume any facts regarding the custody of Aurora during the pendency of this appeal. Such facts will be determined by the trial court.

14. *See Edel v. Edel*, 97 Mich.App. 266, 293 N.W.2d 792, 796–97 (1980).

15. We limit our discussion to situations where a parent obtains custody pursuant to a court order. While similar considerations arise in other contexts, we do not want to encourage "pre-hearing maneuvering for possession of the child." *Carle v. Carle*, 503 P.2d at 1053 n.6.

1. I do not mean to suggest that a parent's sexual conduct is beyond scrutiny in a custody dispute. When the court is presented with evidence that a parent's conduct, sexual or otherwise, has a detrimental—or beneficial—impact on the child, the court may take that evidence into account when fashioning a custody award that is in the child's best interest.

The superior court held that the mother's numerous moves weighed against awarding custody to her, and the majority unquestioningly accepts the trial judge's unfounded assumption that a child is better off growing up in one abode, in one community, than moving from place to place.[2] This assumption is as much a "denigration of a parent's chosen life style" and a "life style conflict between a . . . judge and a parent," to use the majority's words, as is the assumption that a parent's sexual activity adversely affects the parent-child relationship. Moreover, it is an assumption with which many persons would not agree. Although the stability of the home environment is one of the factors that must be considered in making a custody decision, see AS 09.55.-205(5), the fact that the physical location of a child's home changes may have little or no bearing on the stability of the home. Stability is often a function of parental attitude and not of geography. To use a familiar example, I am certain that many of the servicemen and women in this state would be surprised to learn that they are not providing stable homes for their children because their careers may require frequent moves. On the other hand, the fact that a parent remains rooted in one community provides no guarantee that his or her child will have a stable, loving home.

In sum, I agree with the majority's disposition of this appeal and with the reasoning therefor; I do not, however, agree that a parent's nomadic life should be considered relevant in a custody dispute absent evidence that this way of life has a demonstrable impact on the child.

BURKE, Justice, with whom CONNOR, Justice, joins, dissenting.

I dissent.

The majority concedes that, viewed in context, the trial court was concerned with the respective stability of the parties, not their sexual conduct. I agree with that conclusion and see no reason to reverse the court's custody determination simply because of Judge Stewart's reference to what the majority deems an "impermissible factor." I would affirm the judgment of the superior court.

---

2. When speaking of the parties' relative abilities to provide a stable home for the child, the majority views as "undeniably relevant" the fact that the father had lived in one place for a number of years, and "[i]n the same vein, the fact that the mother had only recently attempted to create a stable home environment was also entitled to consideration."