Marie EVANS, Appellant,

v.

Don EVANS, Appellee.

No. S–5818.

Supreme Court of Alaska.

March 11, 1994.

Roger Hare, and a friend, Stephanie Stowman, to testify on her behalf. Additionally, Marie presented testimony from the court-appointed child-custody investigator, Barry Levit, and the children's school counselor, Valerie Demming.

After considering the evidence presented at trial, the superior court found Don and Marie equally capable of providing for the best interests of the children under the statutory criteria specified in AS 25.24.150(c). The court went on to find, however, that the children would benefit from continuing to live in the family residence, which Don had retained, and from avoiding the potential stress of adjusting to a new family setting involving two other children. Concluding that these factors tipped the balance in Don's favor, the court gave Don primary physical custody of both children during the school year and Marie primary physical custody during the summer months.[1]

## II. DISCUSSION

Marie appeals the custody order, arguing that the superior court's ruling was unsupported by the evidence and was based on the court's consideration of impermissible factors.

### A. Standard of Review

■ The trial court is vested with broad discretion in child custody decisions. *Gratrix v. Gratrix*, 652 P.2d 76, 79 (Alaska 1982). Its determination of custody will not be set aside unless the record demonstrates that controlling findings of fact are clearly erroneous or that the trial court abused its discretion. *Zimin v. Zimin*, 837 P.2d 118, 123 n. 10 (Alaska 1992); *Farrell v. Farrell*, 819 P.2d 896, 898 (Alaska 1991).

■ A finding of fact is clearly erroneous only when a review of the entire record leaves us with a definite and firm conviction that the trial court has made a mistake. *Money v. Money*, 852 P.2d 1158, 1161 (Alaska 1993). An abuse of discretion has oc-

Julie A. Smith, Law Office of Teresa L. Brimner, Fairbanks, for appellant.

Christopher E. Zimmerman, Call Barrett & Burbank, Fairbanks, for appellee.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

OPINION

BRYNER, Justice Pro Tem.

This appeal arises from a divorce proceeding between Marie and Don Evans in which the superior court awarded Don primary physical custody of the Evans' two children, Jon Paul and Portia. On appeal, Marie challenges the custody order. We affirm.

## I. BACKGROUND

Marie and Don were married on November 24, 1984. Marie had a son from a previous marriage, Jon Paul, who was born on November 9, 1980. Don adopted Jon Paul in 1986. The parties had a second child, Portia, who was born on September 8, 1985. The parties separated in June 1992, and Don filed for divorce on August 20, 1992. Both parties requested primary physical custody of the children, although both agreed that shared legal custody was appropriate. At the time of trial, Marie was engaged to be married to Sergeant Roger Hare, who was stationed at Eielson Air Force Base near Fairbanks and had two children of his own from a prior marriage.

On March 22–25, 1993, the issue of custody was tried before the superior court. Don and Marie testified and presented various witnesses. Don called on his mother, Violet Evans, and two friends, Gary and Barbara Pitsenberger, to testify in support of his request for custody. Marie called her fiance,

---

* Sitting by assignment made under article IV, section 16 of the Alaska Constitution.

1. The court also awarded the parties shared legal custody of the children and provided for gener-ous visitation rights to each parent during periods of non-primary custody. These aspects of the custody order are not in dispute.

curred if the trial court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others. *McDanold v. McDanold,* 718 P.2d 467, 468 (Alaska 1986).

### B. *Trial Court's Finding that Don and Marie Were Equally Qualified under the Statutorily Specified Factors*

The factors to be considered by the trial court in determining custody are set forth in AS 25.24.150(c); this statute lists eight specific factors that the court must consider in each case and, in addition, authorizes the court to consider any other factors it deems pertinent:

(c) The court shall determine custody in accordance with the best interests of the child.... In determining the best interests of the child the court shall consider

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well being of the child;

(9) other factors that the court considers pertinent.

In the present case, Marie first claims that the evidence fails to support the superior court's finding that, under the eight specific factors listed in the statute, she and Don were equally capable of providing for the best interests of the children. Specifically, Marie asserts that the witnesses supporting Don's request for primary physical custody, Don's mother and the Pitsenbergers, were biased in his favor, whereas the unbiased expert testimony of the child custody investigator, Levit, and the school counselor, Demming, favored her own custody request. Marie argues that the superior court was clearly erroneous in failing to accept the testimony of the "neutral" experts over other "biased" witnesses.

Marie's argument, however, tacitly relies on two assumptions: that the trial court must accept expert testimony at face value whenever it has not been contradicted by opposing expert testimony and that the court is inflexibly required to accord more credit to an ostensibly objective witness than to one who arguably has reason to be biased. Both assumptions are incorrect. In addressing the statutory criteria for determining the best interests of a child, the trial court must decide matters of credibility on a case-by-case basis, "consider[ing] all the relevant circumstances including the demeanor of the witnesses and conflicting testimony." *McDanold,* 718 P.2d at 469. In evaluating the relative credibility of witnesses, the court ordinarily has no obligation to accept expert testimony when it finds other evidence more persuasive;[2] nor is the court bound to favor the testimony of an ostensibly neutral witness who is unconvincing over that of a witness who testifies convincingly despite circumstances suggesting potential bias.

As this court has previously held, "great weight must be accorded to the trial judge's experience and ... evaluation of the demeanor testimony." *Sheridan v. Sheridan,* 466 P.2d 821, 824 (Alaska 1970). When

---

**2.** *Cf. Dolchok v. State,* 639 P.2d 277, 281 (Alaska 1982) (recognizing that, despite "uniform psychiatric testimony" indicating that the defendant was not guilty by reason of insanity, the "ancil-

lary factual matters in [the defendant's] confession provided a sufficient evidentiary basis" to support the defendant's conviction).

the trial judge's decision is dependent largely upon oral testimony of the witnesses seen and heard at trial, this court must give due regard to the trial judge's opportunity to judge the credibility of those witnesses. *Parker v. Northern Mixing Co.*, 756 P.2d 881, 892 (Alaska 1988) (holding that "it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence"); *Kenai Power Corp. v. Strandberg*, 415 P.2d 659, 660 (Alaska 1966).

■ Our review of the record convinces us that, although the trial court heard conflicting testimony on several issues, substantial evidence was presented at trial to allow the court to find that both Don and Marie were fully capable of providing for the emotional and physical needs of their children and that, under the specific criteria listed in AS 24.25.-150(c), both were equally suited to act as the children's primary custodians. This court's role of appellate review does not entail an independent balancing of the conflicting evidence presented below. The trial judge was in the best position to evaluate the witnesses' credibility and their testimony. The trial judge's findings of fact indicate that he fully considered the totality of the evidence, ultimately concluding that Don and Marie were similarly situated with respect to the statutorily specified factors for determining custody. Those findings are not clearly erroneous.

## C. *Trial Court's Consideration of Purportedly Improper Factors*

Marie next contends that, even if the evidence was sufficient to support the trial court's finding that she and Don would be equally capable of providing for the children's needs under the criteria set out in AS 25.24.150(c), the court erred in relying on impermissible non-statutory factors to tip the balance in Don's favor.

In its findings of fact and conclusions of law, the trial court stated:

The Court finds, based upon the facts and statutory factors as listed above, that the primary physical custody of the children during the school year should be vested in [Don]. The Court makes this finding based upon two primary factors. The first of these is that the children will remain residing in the family residence. The second and more important factor is that [Marie] has remarried a military man and has moved into a home where there are two other children. The Court finds that, all other factors being fairly equal, the fact that the children would be moving into a situation where they would have to adjust to two other children tips the scale in favor of primary physical custody being with the father during the school year.

■ Marie argues that the trial court abused its discretion in basing its decision on these two factors. She points out that, among the eight specific factors that must be addressed in determining the best interests of a child under AS 25.24.150(c), factor (c)(5) requires the court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." Marie reasons that the trial court's reliance on the desirability of allowing the children to remain in the family dwelling and on the undesirability of forcing them to adjust to a new family setting was tantamount to considering the parties' ability to provide the children with "a stable, satisfactory environment," as provided for under factor (c)(5). Marie argues that, because the trial court had already determined that she and Don were equally situated with respect to factor (c)(5), its subsequent reliance on essentially the same factor to support awarding custody to Don was contradictory.

We agree with Marie that the desirability of keeping the Evans children in the family residence and the undesirability of requiring them to adjust to a new family setting were factors that the trial court could properly have considered in addressing AS 25.24.-150(c)(5). *See, e.g., Craig v. McBride*, 639 P.2d 303, 305 (Alaska 1982). The record nevertheless reveals that the court did not actually address these issues when it addressed factor (c)(5). Regarding this statutory factor, the court found:

Since the separation the children have been in a stable and satisfactory environment fifty percent of the time in each parent's homes and thus the Court finds there is nothing to discriminate between

the parties in regard to this factor. The parties believe and the Court finds that it is important to provide some stability in the children's living situation.

The trial court's finding makes it clear that, in addressing factor (c)(5), the court focused on the narrow question of Don's and Marie's respective abilities to maintain stable and satisfactory relations between themselves and the children following separation. It was only in this narrow respect, the stability of the children's environment in relation to each parent, that the trial court purported to find Don and Marie equally situated under factor (c)(5).

Upon later returning to the issue of stability, the court broadened its consideration to encompass the children's more general needs for stability in their overall living environment; the court evaluated the children's needs, not just in relation to each parent, but in relation to the totality of the circumstances they were likely to encounter in their respective parents' homes. In this context, the court's reliance on the desirability of the children's continued placement with Don in the family residence, and on the undesirability of forcing their adjustment to a new family setting with Marie neither duplicated nor contradicted the court's prior determination of relative equality under factor (c)(5).

The fact that the trial court could have taken account of the children's overall stability in addressing factor (c)(5), but did not actually do so, had no bearing on the validity of the court's ultimate decision in this case, since the court could and did properly consider the same circumstances under paragraph (c)(9) of AS 25.24.150(c). This paragraph vested the court with broad authority to address, in addition to the specific factors articulated in paragraphs (c)(1) through (c)(8), all "other factors that the court consider[ed] pertinent." As we have emphasized in previous cases, a trial court's determination of the best interests of a child in an initial custody proceeding should be based on "*all relevant factors including* those enumerated in AS 25.24.150(c)." *McDanold v. McDanold,* 718 P.2d at 469 (quoting *McClain v. McClain,* 716 P.2d 381 (Alaska 1986)). As long as the record establishes, as it does here, that the trial court did in fact properly consider "all relevant factors," the specific statutory rubric the court invoked in the course of its consideration is inconsequential.

■ Marie further argues, however, that the trial court abused its discretion in deeming the children's ability to remain in the family residence to be a pivotal factor in awarding custody. Marie points out that Don was awarded custody of the house because it had belonged to him before the marriage. Marie claims that, because Don was awarded the house as a result of circumstances that were beyond her control and that were unrelated to Don's ability to be a competent parent, the court should not have been allowed to make Don's occupancy of the home play a decisive role in awarding custody. In support of this argument, Marie cites *Craig v. McBride,* 639 P.2d 303 (Alaska 1982). Yet that case actually defeats Marie's argument. In *Craig,* we held that the trial court, in assessing the relative stability of the parties under AS 24.25.150(c)(5), could properly consider the fact that the father had lived in the same town for many years, earning broad community respect, as well as "the fact that the mother had only recently attempted to create a stable home environment." *Id.* at 305. To the extent *Craig* has a bearing on the present case, it indicates that the trial court acted properly in considering, as a factor in awarding custody, the added stability the Evans children would enjoy if they remained in the family residence.

Nor do we perceive any other ground for concluding that the trial court acted impermissibly in basing its determination of custody on the two non-statutory factors at issue here—the added stability the Evans children might gain from continuing to live in their family residence and the potential instability they might suffer from being uprooted immediately following the divorce. Contrary to Marie's arguments on appeal, the court did not give these factors disproportionate significance over other relevant factors; rather, it emphasized that they were determinative only because the parties were equally qualified to have custody of the children in all other respects. Furthermore, the prominent role the court assigned to these factors does not, as Marie contends, reflect the court's reliance on the questionable assumption that

children whose parents divorce should generally remain in the family residence; instead, the court's decision appears to have been based on case-specific evidence demonstrating Jon Paul's and Portia's actual need for physical and emotional continuity and stability in their overall living situation.[3]

Under the circumstances of the present case, the trial court did not abuse its discretion in considering the potentially undesirable emotional consequences that Jon Paul and Portia might have suffered had they been required to adjust to the changed family environment of Marie's new marital residence.[4]

## III. CONCLUSION

We conclude that the trial court did not abuse its discretion in awarding primary physical custody of the children to Don. Accordingly, we AFFIRM the judgment entered below.

**3.** The trial court's findings on this point were supported by the testimony of both the school counselor and the child custody investigator. The child custody investigator, Levit, testified that moving into a new home with two other children would not necessarily result in instability for Jon Paul and Portia, however, "there need[ed] to be blending, ... a meshing of everybody, an understanding, a creation of relationships that work." The school counselor, Demming, testified that moving into a new home with two other children would be "another change that Jon Paul and Portia have to ... deal with and to ... figure out where they are in the family and which place they have, ... in communication with the new stepdad."

**4.** In connection with this issue, Marie raises several peripheral arguments that require only brief attention. Marie argues that the trial court abused its discretion by focusing on the physical stability of the children rather than on their emotional needs in determining which additional factors it considered pertinent. Our review of the record, however, convinces us that the trial court's determination was based on a thorough evaluation of the children's physical and emotional needs.

Marie also asserts that the court should have given her preference in view of her "status as primary caregiver of the children." We have never adopted a rule giving custodial preference

to the primary caregiver. At least one commentator has suggested that such a preference is no more desirable than the now discredited tender years doctrine which gave custodial preference to the mother of young children. 2 Clark, *The Law of Domestic Relations in the United States,* § 20.4(b) pp. 491–501 (West Pub.1987). Given Marie's failure to assert the issue below and the conflicting testimony as to whether Marie had in fact been the childrens' primary caregiver, we decline to address Marie's argument for a primary caregiver preference.

Finally, Marie relies on this court's holding in *Lowdermilk v. Lowdermilk,* 825 P.2d 874 (Alaska 1992), to argue that the trial court failed to adequately explain how the two non-statutory factors it relied on had any actual bearing on Don's and Marie's ability to provide for the best interests of their children. In *Lowdermilk,* this court held that it was improper for the trial court to consider that the mother "[did] not see the world as the average person sees it" without any explanation of what the statement meant or how the factor related to the issue of parenting ability. *Id.* at 879. Here, by contrast, the trial court explained that the two additional factors it deemed determinative—continuing to live in the marital home and not moving in to a home which had two other children—affected Jon Paul's and Portia's ability to adjust to the divorce and their emotional stability. We find no violation of *Lowdermilk.*