Barry K. McQUADE, Appellant,

v.

Patricia A. McQUADE, Appellee.

No. S–6608.

Supreme Court of Alaska.

Aug. 18, 1995.

William T. Ford, Anchorage, for appellant.

Gary R. Eschbacher, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

**2.** Because I would resolve the case on this issue, I do not address the other arguments presented on appeal.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

Barry McQuade appeals the superior court's order awarding custody of his minor son, Jeffrey, to his ex-wife, Patricia, who chose to move to Texas following the parties' separation but prior to the entry of the court's custody decree. Barry asks us to adopt the standard articulated in *D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200, 365 A.2d 27, *aff'd*, 144 N.J.Super. 352, 365 A.2d 716 (1976), for determining the custody of a minor child where one parent chooses to move out of state, and to hold that the superior court abused its discretion in making its final custody determination.

### II. FACTS AND PROCEEDINGS

Barry and Patricia McQuade were married in 1989 in Anchorage. There was one minor child of the marriage, Jeffrey Alan McQuade, born in 1989. Barry filed for divorce in 1993, and both parties sought sole custody of Jeffrey. The superior court entered an order for a custody investigation. Thereafter, Barry and Patricia agreed to share interim custody of Jeffrey on a "fifty/fifty" basis pending trial.[1] Sometime following separation, Patricia decided to move to Texas for financial reasons, as well as to be closer to her family and "start life over again."

At the time of trial, Patricia was forty-one years old. She has been married four times, with her three previous marriages also ending in divorce. She has three older children, Lori, age twenty-two at trial, Blanton, age fourteen, and Sean, age ten, all of whom live in the same household as Patricia. Patricia works as a medical laboratory technician.

At the time of trial, Barry was forty-six years old. He has been married twice, with the previous marriage also ending in divorce. He has two adult children, Bryan, age twen-

ty-four, and Bruce, age twenty-one, both of whom live in the Anchorage area. Barry is employed as an orthopedic technician.

The custody investigator conducted an investigation and issued a report recommending that the parties be granted joint legal custody of Jeffrey, with primary physical custody being awarded to Patricia. The custody investigator noted that both parties may have difficulty in providing for Jeffrey's emotional development; that both parties have abused alcohol during the marriage; and that both parties may have trouble fostering a nurturing and loving relationship with the other parent; but also that Jeffrey loves and cares equally about both parents and appears to be bonded to both; and that both parties appear able to provide a stable home environment. The custody investigator further noted that "[t]he sibling relationship in this family is very strong, especially between Jeffrey and his older sister, Lori. It is of utmost importance that this relationship be maintained."

The custody investigator testified that the ideal situation would be one in which Patricia stayed in Alaska so that the parties could continue the shared custody arrangement. The custody investigator further testified that the deciding factor in her custody recommendation was the bond between Jeffrey and his siblings.[2] She testified that in her opinion it was in the best interest of Jeffrey to stay with his older siblings. In particular, the custody investigator testified as to the strong relationship between Jeffrey and Lori, stating that she was "a primary caretaker" for Jeffrey.

At the conclusion of the trial, the superior court stated that it would have ordered joint legal and physical custody to the parties if Patricia were not planning to move out of the state. However, after considering the best interests of Jeffrey, the superior court

---

1. The superior court granted Barry and Patricia a divorce on June 16, 1994, and left issues pertaining to child custody, child support, and property division for determination at trial.

2. The custody investigator testified as follows:
   Q   There weren't any strong factors, or were there strong factors, that made you decide one

way or another? And what were the strong factors, if any?
   A   The deciding factor in regards to the recommendation that I made in this case was the interview with the children, in which I discovered that the older children, as well as the little boy, had a really strong relationship to each other.

awarded joint legal custody to the parties with primary physical custody being awarded to Patricia. Barry appeals.

## III. DISCUSSION

### A. The "Best Interests" of the Child is the Proper Standard to Apply in Making a Custody Determination where one Parent Chooses to Move out of State.[3]

■ Barry requests this court to adopt the standard set out in D'Onofrio, 365 A.2d at 27, for custody determinations where one parent chooses to move out of state. This standard is based in part on New Jersey's anti-removal statute which forbids the removal of children of divorced parents from the state without the consent of the noncustodial parent "unless the court, upon cause shown, shall otherwise order." Id. at 28. In D'Onofrio, the New Jersey Superior Court considered four factors in determining custody where a custodial parent chose to move out of state:

(1) the prospective advantages of the move for the child and custodial parent;

(2) the motives of the parent seeking the move, including consideration of the parent's likely compliance with future visitation;

(3) the motives of the parent opposing the move; and

(4) the degree to which visitation can be restructured in order to preserve and foster the relationship between the child and noncustodial parent.

1 Jeff Atkinson, Modern Child Custody Practice § 7.07, at 399 (1986).[4] Under D'Onofrio, Patricia would have to demonstrate that the move would lead to a better lifestyle for herself and Jeffrey, and that the decision to move was not undertaken primarily to frustrate Barry's custodial and visitation rights.[5]

■ We have previously applied a different standard in reviewing similar custody determinations. In House v. House, 779 P.2d 1204, 1208 (Alaska 1989), we reviewed a trial court's custody determination where the custodial parent chose to move out of state so that his wife could pursue a doctorate degree at a university in California.[6] First, we con-

**3.** Barry requests this court to adopt a new standard for determining the custody of a minor child where one parent chooses to move out of state. Such a determination raises a question of law to which this court applies its independent judgment "adopting the rule of law that is most persuasive in light of precedent, reason and policy." Cox v. Cox, 882 P.2d 909, 913 (Alaska 1994); see also Ayers v. Ayers, 508 N.W.2d 515, 518 (Minn.1993) (determining the proper standard to be applied in making a custody determination presents a question of law).

**4.** Specifically, the D'Onofrio court stated:

Where, however, the custodial parent can demonstrate that a real advantage to herself and the children will result from their removing their residence to a place so geographically distant as to render weekly visitation impossible, then the court must weigh a number of determinative factors in order to accommodate the compelling interests of all of the family members. It should consider the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children. It must evaluate the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent, and whether the custodial parent is likely to comply with substitute visitation or-

ders when she is no longer subject to the jurisdiction of the courts of this State. It must likewise take into account the integrity of the noncustodial parent's motives in resisting the removal and consider the extent to which, if at all, the opposition is intended to secure a financial advantage in respect of continuing support obligations. Finally, the court must be satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed.

D'Onofrio, 365 A.2d at 30.

**5.** 2 Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 20.9, at 557 (2d ed.1987).

**6.** This determination was made in response to the noncustodial parent's motion to modify custody. We held that the custodial parent's decision to relocate the children from Alaska to California constitutes a substantial change in circumstances which entitles the noncustodial parent to a hearing on the children's best interests. House, 779 P.2d at 1207–08. This court then considered the superior court's determination of the children's best interests. Id. at 1208. Thus, while House involved a motion to modify custody, the same standard applies in reviewing the superior court's initial custody determination at issue in this case.

sidered the best interests of the children in light of the criteria in AS 25.24.150(c) and concluded that the record supported the trial court's findings that remaining in the custody of the parent who was moving would be in the children's best interests. *Id.* at 1208. Second, we noted that "[m]ost states permit custodial parents to move out of state with their children if there is a legitimate reason for the move." *Id.* (citing 1 Atkinson, *supra* p. 5, § 7.01, at 390). We then concluded that the "decision of the family to move to [California] was based upon a valid reason, that is, a reason which was not primarily motivated by a desire to make visitation … more difficult." *Id.* Thus, in making a custody determination where the existing custodial parent chooses to move out of state, a court must consider the best interests of the children by applying the criteria in AS 25.24.150(c), and in so doing should consider whether there is a legitimate reason for the move.[7]

Barry seems to argue that where the parties enjoyed joint custody of a child, or where the court would have awarded joint custody if one of the parents was not planning to move, a more rigid standard, as reflected in *D'Onofrio*, is appropriate. However, at least one authority states that if parents have joint physical custody and one parent seeks to move the child, "the appropriate standard would be similar to a *de novo* review that would be made at an initial custody determination. Custody would be determined according to the best interests of the child, using a broad range of factors." 1 Atkinson, *supra* p. 5, § 7.06, at 398.[8] Essentially, this

is the standard that we articulated in *House*, 779 P.2d at 1204.

We have consistently avoided mandating rigid rules for making custody determinations. *See, e.g., Nichols v. Nichols,* 516 P.2d 732, 736 (Alaska 1973) (stating that in custody matters, "there is no hard and fast rule"). And, unlike New Jersey, Alaska has not adopted an anti-removal policy. Rather, in the circumstance where the custodial parent desires to move out of Alaska, we consider the best interests of the child so that such determinations are based upon the facts and circumstances of each particular case. We therefore conclude that the standard set out in *House* is the proper standard to apply in the factual circumstance where one parent is planning to move out of Alaska. We thus decline to adopt the *D'Onofrio* standard.

B. *In Making its Custody Ruling the Superior Court Did Not Abuse its Discretion in Determining the Best Interests of the Child.*[9]

■ Barry argues that the superior court erred in awarding primary physical custody of Jeffrey to Patricia. To this effect, Barry argues that the superior court gave too much weight to sibling bonds while not giving sufficient weight to parental bonds and the importance of maintaining continuity.[10]

1. *The superior court did not impermissibly favor sibling bonds over parental bonds.*

■ As to parental bonds, the superior court "carefully considered the love and af-

---

7. *See also Lee v. Cox,* 790 P.2d 1359, 1361 n. 5 (Alaska 1990) (citing authority from several other jurisdictions consistent with this standard).

8. *See also In re Marriage of Bednar,* 146 Ill. App.3d 704, 100 Ill.Dec. 84, 496 N.E.2d 1149 (1986) (holding that parent's request to remove child who was the subject of a joint custody order is governed by child's best interests); *Ayers,* 508 N.W.2d at 515 (court applied best interests standard in considering mother's request to relocate children who were subjects of a joint legal and physical custody order).

9. The superior court is vested with broad discretion in making child custody determinations. *Gratrix v. Gratrix,* 652 P.2d 76, 79 (Alaska 1982). This court will reverse the superior court's "resolution of custody issues only if this court is con-

vinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous." *Id.* at 79–80. "Abuse of discretion is established if the trial court considered improper factors or failed to consider statutorily-mandated factors, or improperly weighted certain factors in making its determination." *Id.* at 80.

10. Alaska Statute 25.24.150(c) provides:

In determining the best interests of the child the court shall consider:

. . . .

(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; . . . .

fection that both parents have" for Jeffrey. Moreover, the superior court considered the custody investigator's report which stated that "Jeffrey loves and cares equally about both parents and appears to be bonded to both." As to sibling bonds, the superior court "considered as an important factor in this case that Jeffrey is bonded to his half brothers and half sister," and found it "essential for Jeffrey to have contact with his half brothers and half sister for his own best interest." Moreover, the superior court considered the custody investigator's report which stated that the sibling relationships were very strong and should be maintained. The superior court also was able to take into account the custody investigator's testimony that the sibling bonds were the deciding factor in her recommendation.

On appeal, Barry argues that the superior court gave too much weight to sibling bonds and not enough weight to parental bonds. Alaska Statute 25.24.150(c)(4) requires the superior court to consider "the love and affection existing between the child and each parent" in determining the best interests of the child. In addition, "[t]his court has often embraced the proposition that it is desirable to not separate siblings in the course of custody disputes." *Craig v. McBride*, 639 P.2d 303, 306 & n. 9 (Alaska 1982) (the fact that a case involves half siblings has no bearing on "the desirability of keeping the children of the family together") (citation omitted). However, we have declined to adopt a rigid standard for weighing the importance of maintaining sibling bonds in custody disputes, and have instead articulated a more flexible approach:

[C]onsideration should be given to the desirability of not separating the children unless their welfare clearly requires such a course. As in other facets of the difficult problems confronting a trial judge in custody matters, there is no hard and fast rule. The question of whether or not it is necessary to separate children must depend upon the facts and circumstances of each particular case.

*Nichols*, 516 P.2d at 736 (footnote omitted); *see also Morel v. Morel*, 647 P.2d 605, 607–08 (Alaska 1982); *Craig*, 639 P.2d at 306.

The superior court essentially concluded that Jeffrey was equally bonded to each parent and that, all else being equal, sibling bonds were the deciding factor. Based on the record in this case and prior Alaska case law, we hold that this does not constitute an abuse of discretion on the superior court's part.

2. *The superior court did not impermissibly favor sibling bonds over the maintenance of continuity.*

■ As to the factors of stability and continuity, the superior court stated that "[e]ach parent provides to Jeffrey a different environment for Jeffrey to grow in, but both environments within the means of the respective parent are found by this Court to be acceptable and satisfactory environments." Moreover, the superior court considered the custody investigator's report which stated as follows:

Both parents appear to provide stability insofar as maintaining an adequate home atmosphere. Mrs. McQuade's history of marriages indicates some instability that has certainly impacted the older children. It is unclear to Investigator if this could continue to be a problem and is an issue of concern to Investigator. If Jeffrey's relationship to both parents is maintained adequately and consistently, he would most likely be minimally affected by instability in this area unless Mrs. McQuade was involved in a relationship which consisted of domestic violence or alcohol/drug abuse, etc.

In this appeal, Barry argues that the superior court gave too much weight to sibling bonds while not giving enough weight to the importance of maintaining continuity. To this effect, Barry argues as follows:

Given the mother's history of frequent moves following divorce, along with the fact that she had lived in Alaska for a number of years, that Alaska was Jeffrey's home, and the home of all of her other children, that there was no testimony that she was in any financial difficulty, or that the proposed move to Texas and transfer of employment would be financially beneficial to her, the court should have deter-

mined that the statutory factors of promoting stability and continuity for the child was [sic] more important than any anticipated effect on sibling relationships and ordered a continuation of the joint custody arrangement.

Alaska Statute 25.24.150(c)(5) requires the superior court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity" in determining the best interests of the child. Thus, the superior court must consider each parent's respective ability to maintain stable and satisfactory relations between themselves and the child following separation. We note, however, "[s]tability is often a function of parental attitude and not of geography." *Craig*, 639 P.2d at 308 (Rabinowitz, C.J., concurring).

We have previously addressed the role that the factors of stability and maintaining continuity should play in custody determinations. In *Craig*, we held that the trial court, in assessing the relative stability of the parties under AS 24.25.150(c), could properly consider the fact that the father had lived in the same town for many years, as well as "the fact that the mother had only recently attempted to create a stable home environment." *Id.* at 305.[11] Moreover, in *Evans v. Evans*, 869 P.2d 478 (Alaska 1994), we held that the trial court could properly broaden its consideration of the issue of stability "to encompass the children's more general needs for stability in their overall living environment;" that is, the court could evaluate "the children's needs, not just in relation to each parent, but in relation to the totality of the circumstances they were likely to encounter in their respective parents' homes." *Id.* at 482.[12] This court concluded by stating that the trial court's decision was "based on case-specific evidence demonstrating [the children's] actual need for physical and emotional continuity and stability in their overall

living situation." *Id.* at 483 (footnote omitted).

The superior court was aware of Patricia's propensity for moving and its possible effects on stability and continuity. In *Evans*, we suggested that the criteria of stability and continuity must be considered in light of the facts of each particular case. *Id.* In the case at bar, the superior court considered Jeffrey's relationship with his siblings as an essential component of maintaining the emotional continuity and stability of Jeffrey's home environment. Thus, the record shows that the superior court considered the factors of stability and continuity and, in light of the particular facts of this case, chose to emphasize emotional continuity over geographic continuity. We hold that this does not constitute an abuse of discretion.

## IV. CONCLUSION

The superior court's decree awarding primary physical custody of Jeffrey to Patricia is AFFIRMED.

---

11. However, we cautioned trial courts "that it is a parent's present ability to provide for the needs of the child which is at issue, not a parent's past." *Id.* at 305 n. 7.

12. In *Evans*, we held that the superior court did not abuse its discretion in awarding primary physical custody of the children to their father based on the nonstatutory factors of the added stability the children might gain from continuing to live in their family residence, and the potential instability they might suffer from being uprooted immediately following a divorce and having to adjust to a new family setting.