Valerie P. MELENDREZ, Appellant,

v.

Michael A. MELENDREZ, Appellee.

No. S–12198.

Supreme Court of Alaska.

Sept. 15, 2006.

---

Michael P. Heiser, Ketchikan, for Appellant.

Amanda M. Skiles, Ketchikan, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

In this custody case, a mother challenged a custody modification that would result in the placement of all four of her children with their father. Although initially the mother had been granted custody of the children, she did not oppose the father's modification request placing the two older children with him. However, she challenged the superior court's decision to also move the two younger children to live with their father. Because the mother failed to establish clear error or abuse of discretion by the superior court, we affirm the lower court's decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

Valerie Melendrez and Dr. Michael Melendrez, Sr. had four children during their mar-

riage: Michael Jr. (born 1990), Candace (born 1991), Gabriel (born 1997), and Audrey (born 1999). The family lived in Craig from 1993 until February 2002, when Michael Sr. and Valerie separated. Valerie relocated to California with the children during the separation, and in 2003 the parties divorced. Michael Sr. and Valerie developed a custody and visitation agreement, adopted by Superior Court Judge Trevor N. Stephens, which granted Valerie primary physical custody of the four children and Michael Sr. five weeks of visitation each summer. According to the terms of the agreement, the children lived with Valerie in California and spent their summers with Michael Sr. in Craig.

On November 16, 2004 Judge Stephens received a handwritten letter from Candace expressing her desire to live with her father in Alaska. Valerie's signature appears at the bottom of the letter as evidence of her consent to the custody modification. Two weeks later, however, Valerie submitted a letter to the court expressing second thoughts about allowing Candace to live with her father. Michael Sr. moved to modify custody in order to become Candace's primary physical custodian. A hearing was held in December 2004, and Judge Stephens denied the motion to modify custody. Applying the statutory analysis required in AS 25.20.110(a),[1] the court found that, while there had been a substantial change in circumstances, the requested change was not in Candace's best interests.

In August 2005 Michael Sr. filed a letter with the court expressing concern for the children's well-being as the result of an incident during which Valerie struck Michael Jr., causing him to bleed. A month later Michael Sr. notified the court that Michael Jr. and Candace would be moving to Craig to live with him. He also appeared to request primary physical custody of Gabriel, stating that Gabriel wished to return to Alaska "to be with his older brother, sister, and his Dad." Valerie did not object to the change in custody for Michael Jr. and Candace, but she

---

**1.** AS 25.20.110(a) states: "An award of custody of a child ... may be modified if the court determines that a change in circumstances re-

quires modification of the award and the modification is in the best interests of the child."

opposed granting Michael Sr. custody of Gabriel. Based upon the documents filed by both parties, the court awarded primary physical and legal custody of Michael Jr. and Candace to the father and ordered an evidentiary hearing to be held regarding custody of Gabriel. Michael Sr. then amended his motion in October 2005 to seek custody of both Audrey and Gabriel on the ground that it would be in the best interests of all four children to be kept together. Valerie opposed the motion to modify custody.

Judge Stephens granted custody of Audrey and Gabriel to Michael Sr., relying heavily on the benefits of keeping the children together. According to the court, divided custody would "substantially impair if not destroy their sibling relationships." The court found that the negative impact on their sibling relationships "outweighs the possible detrimental impacts on Gabriel and [Audrey] of moving from their mother's home and returning to Craig and the possibility of the older [two] siblings being bad influences on them."

Valerie appeals.

### B. Proceedings

In awarding physical and legal custody of Gabriel and Audrey to Michael Sr., Judge Stephens looked to AS 25.20.110(a) and examined whether any substantial changes in circumstances had occurred warranting a modification of custody and whether a modification would be in the best interests of the children. The court found that Michael Sr. demonstrated at least one substantial change in circumstances affecting the children's welfare since the previous custody order was entered: the transfer to Michael Sr. of physical custody of the older siblings, Michael Jr. and Candace. In addition, the court found that the reasons Michael Jr. and Candace returned to Alaska (mainly, their altercations with Valerie), changes in Michael Sr.'s work schedule and location such that he is able to work from home, and his participation in anger management and alcohol treatment programs all constituted changes in circum-

stances since the previous custody order was enacted.

The court then evaluated the best interests of Audrey and Gabriel by considering and weighing the statutory "best interest" factors set forth in AS 25.24.150(c)(1)-(8). The court concluded that the statutory custody factors on balance slightly favored Michael Sr. because he already had physical custody of Michael Jr. and Candace. The court expressed its belief that the importance of maintaining sibling ties outweighed the consequences of moving Gabriel and Audrey from their mother's home in California. Consequently, the court awarded Michael Sr. legal and physical custody of the two younger children.

Valerie appeals, arguing that the superior court erroneously determined that it would be in Gabriel and Audrey's best interests to be placed with their father. First, she argues that the court gave undue weight to the desirability of keeping the children together. To substantiate this claim she maintains (1) that there is insufficient evidence demonstrating strong bonds between the older and younger children, and that in fact the bonds are probably fairly weak, and (2) that the older children have been bad influences on Gabriel and Audrey, so that the younger children would probably benefit from being separated from their older siblings. Second, she contends that the superior court failed to accord proper weight to the stability and continuity that would be achieved by allowing Gabriel and Audrey to remain with her. Valerie asks us to reverse the superior court's modification of custody and to order that primary custody of Gabriel and Audrey be returned to her; alternatively, she asks us to reverse and remand for further findings on the issue of sibling bonds.

### III. STANDARD OF REVIEW

 The trial court has broad discretion in deciding child custody disputes. "A trial court's determination of custody will be set aside only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court has abused its discretion."[2] A finding of

**2.** *Chesser–Witmer v. Chesser,* 117 P.3d 711, 715 (Alaska 2005) (quoting *Hamilton v. Hamilton,* 42 P.3d 1107, 1111 (Alaska 2002)).

fact is clearly erroneous "when this court is left with a definite and firm conviction that the trial court has made a mistake."[3] Abuse of discretion is established "if the trial court considered improper factors in making custody determinations, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[4]

## IV. DISCUSSION

In order to successfully modify a custody arrangement, the parent requesting the change must prove two facts: (1) that there has been a substantial change in circumstances affecting the welfare of the children since the last custody order was entered, and (2) that the change requested is in the best interests of the children.[5]

### A. A Substantial Change of Circumstances Has Been Demonstrated.

The superior court held that Michael Sr. met his burden of proving that a substantial change in circumstances justified a modification of custody. The court cited three changes in circumstance that occurred since the previous custody order was entered. First, Michael Sr. obtained primary physical custody of Michael Jr. and Candace.[6] Second, Michael Sr. changed his work schedule and location so that he could work half days out of his home, allowing him to spend more time with his children. Third, Michael Sr. participated in anger management and alcohol treatment programs.[7]

Valerie does not dispute the court's findings of changes in circumstances, and we find no abuse of discretion by the court.

### B. The Superior Court Did Not Abuse Its Discretion in Determining that Placement of the Children with Their Father Would Be in Their Best Interests.

The superior court determines the children's best interests by considering and weighing the statutory "best interests" factors set forth in AS 25.24.150(c)(1)-(9). These factors include:

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the

---

**3.** *Id.*

**4.** *Id.*

**5.** AS 25.20.110(a); *Nichols v. Mandelin,* 790 P.2d 1367, 1371 (Alaska 1990).

**6.** Valerie concedes that she did not oppose Michael Jr. and Candace going to live with their father. In a letter to the court she explained that, after an incident with Michael Jr., she "decided to have their father share in the responsibilities of parenthood. He had ... been recruit-

ing for custody of Michael Jr. and Candace from the beginning of the separation.... Since the older children were not listening to me that's when I decided to have them live with their father in Alaska."

**7.** In the court's initial order of August 2002 in which it awarded custody to Valerie, the court found that Michael Sr. had "anger, impatience, and alcohol problems that adversely impact his abilities" to meet the children's emotional needs.

household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

We have held that the superior court need not address each factor individually, but that it must provide "a clear indication of the factors it considered important in exercising its discretion."[8] Here the superior court provided a brief analysis of each factor. The court acknowledged that both parents desired to and were capable of meeting the physical, emotional, mental, religious, and social needs of the children; both parents had loving and affectionate relationships with the children; both parents could provide stable homes and would face similar challenges as single parents of four children; and neither parent was unfit on the basis of violence or substance abuse. Nonetheless the court concluded that "on balance" the statutory factors "slightly favor" Michael Sr.:

> The primary reason [that the statutory factors favor Michael Sr.] is his having custody of Candace and Michael. Gabriel and [Audrey] would rarely see Candace and Michael if divided custody continues. This would substantially impair if not destroy their sibling relationships. That immediate and likely concern outweighs the possible detrimental impacts on Gabriel and [Audrey] of moving from their mother's home and returning to Craig and the possibility of the older [two] siblings being bad influences on them.

Because the court found that sibling relationships tipped the balance in favor of Michael Sr., it modified custody to award him physical custody of all four children.

## 1. The superior court did not err by emphasizing the desirability of keeping the siblings together.

Valerie first contends that the superior court erred by placing too much emphasis on the desirability of keeping all four children together. In considering the custody placement of siblings, we have adopted a flexible, case-determinative approach. "The question of whether or not it is necessary to separate children must depend upon the facts and circumstances of each particular case."[9] While we have "often embraced the proposition that it is desirable to not separate siblings,"[10] our "concern for maintaining sibling relationships has not been transformed into a rigid rule to govern all situations."[11] Rather, we accord superior court judges "the necessary discretion to best respond to the myriad of factual settings which will invariably arise in custody matters, at all times cognizant that it is the best interests of the child which is the paramount consideration."[12]

Valerie challenges the court's factual finding of a close relationship among the children. She maintains that Michael Sr. failed to produce sufficient evidence of strong sibling relationships among the four children. Yet she concedes that Michael Sr. introduced evidence that Michael Jr. has a close relationship with Audrey and Gabriel, that he misses them, and he would like to see them again. She also acknowledges that Michael Sr. testified that Gabriel "was in tears" after the first custody modification and told his father that he "wanted to come and be with his big brother."

Valerie additionally maintains that the evidence suggests that the older children were not strongly bonded with their younger siblings. She offers no support for this argument, however, other than her belief that "[i]f sibling bonds were strong, Michael [ ] Jr. and Candace would not have left their younger siblings and move[d] to Alaska." But this argument neglects to consider the reasons that the older children sought to escape their mother's custody and the relative powerlessness of the younger children; in short,

---

**8.** *Chesser–Witmer,* 117 P.3d at 718 (quoting *Smith v. Weekley,* 73 P.3d 1219, 1225 (Alaska 2003)).

**9.** *Nichols v. Nichols,* 516 P.2d 732, 736 (Alaska 1973).

**10.** *Craig v. McBride,* 639 P.2d 303, 306 (Alaska 1982) (citing *Nichols,* 516 P.2d at 736; *Rhodes v. Rhodes,* 370 P.2d 902, 903 (Alaska 1962)).

**11.** *Craig,* 639 P.2d at 306.

**12.** *Id.*

it fails to prove that the relationship among the siblings was weak.

Valerie suggests that strong bonds between the older and younger children are not likely because of the gap in their ages. This point is speculative at best. Valerie introduces no evidence to support her conclusion, other than her own belief that "children of the same age group have more in common with each other than ... children of another age group," and that "[i]t is questionable how much time teenagers would want to spend with younger children." We cannot agree that age differences necessarily preclude a close sibling bond, particularly given the specific evidence that Michael Jr. wanted to spend time with his younger siblings and that Gabriel wished to be with his older siblings.

Valerie asserts that Gabriel and Audrey would benefit from being separated from Michael Jr. and Candace because the older children "had a bad attitude ... [which] caused the two younger children to act out and not listen." The superior court noted, however, that "[t]he record reflects ... that Michael's attitude and conduct has improved markedly since he has resided with Dr. Melendrez and the record does not reflect that Dr. Melendrez has had any disciplinary problems with Candace." The record shows that the two older children had a difficult relationship with their mother, not with their father. Valerie offers no evidence to prove that the court's findings in this regard are clearly erroneous.

Finally, Valerie suggests that the superior court should have waited to see how Candace and Michael Jr. adjusted to life in Craig before modifying custody for Gabriel and Audrey. She argues that it is conceivable that Candace or Michael Jr. may choose to return to California and their friends, school, and extended family. She also suggests that if Michael Jr. attends college, the children will be together for only a short period of time. She states, "The court should have considered that this likely reality weighed against severing the young children from their established household with their mother." While these arguments may be persuasive to some degree, she has not demonstrated that the court failed to consider them, or

that the court abused its discretion in its final ruling.

The superior court weighed the value of sibling relationships against other relevant factors in its discussion of AS 25.24.150(c)(1)-(2) (the desire and capability of each parent to meet the physical, emotional, mental, religious, and social needs of the children). The court found that, while Valerie was marginally better able to meet Audrey and Gabriel's social needs "in the sense that their current friends, school, and their extended family are where she resides," Audrey and Gabriel had resided in that location only for three years. Outweighing that factor, the court found, was that Michael Sr. was better able to meet the children's emotional needs because he has custody of the older brother and sister. The superior court noted, "The record reflects that Gabriel and Audrey have a close relationship with Michael and at least a normal sibling relationship with Candace." While Valerie clearly disagrees with the court's conclusion about the value of maintaining strong relationships among Michael Jr., Candace, Audrey, and Gabriel, she has not demonstrated that the court's factual findings were clearly erroneous, or that the court abused its discretion by considering sibling bonds in making its custody determination.

## 2. The court did not fail to accord proper weight to continuity and stability.

Valerie argues that the superior court erred in emphasizing sibling bonds over continuity and stability. She claims that the court did not adequately consider the importance of a continuous and stable home environment, which would be interrupted if the younger children were removed from their primary care-giver, as well as their established friends, school, home, and extended family. In support of this argument, she observes that Gabriel and Audrey were too young when they left Craig to have any memory of or attachment to the Craig home.

Alaska Statute 25.24.150(c)(5) requires the superior court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity" in determining the child's

best interests. We have defined stability as "often a function of parental attitude and not of geography."[13] The superior court may "properly broaden its consideration of the issue of stability to encompass the children's more general needs for stability in their overall living environment," and it may "evaluate the children's needs, not just in relation to each parent, but in relation to the totality of the circumstances they were likely to encounter in their respective parents' homes."[14]

The superior court in the present case acknowledged that Valerie provided a stable and satisfactory environment. The court noted that Gabriel and Audrey had lived in California with their mother for three years, and if custody were not modified they would be able to continue to attend the same school, have the same friends, and see their extended family. Yet, the current custody split would preclude them from seeing their older brother and sister, with whom they had lived their entire lives, for any significant period of time. The court admitted that this situation presents a close question. It concluded that the importance of the sibling relationships prevailed over other considerations. Valerie has not demonstrated that this conclusion represented an abuse of discretion.

Moreover, in *McQuade* we held that the superior court may properly consider sibling relationships as "an essential component of maintaining the emotional continuity and stability of the child's home environment."[15] In that case we concluded that the superior court did not abuse its discretion when, in considering stability and continuity, it "chose to emphasize emotional continuity over geographical continuity."[16]

The *McQuade* analysis is applicable here. The superior court apparently considered the relationships among the children to be an essential component of emotional stability for Audrey and Gabriel. It appropriately balanced multiple factors in considering the best interests of the children, and it determined that the need for continuity of sibling relationships outweighed other considerations. Valerie has not demonstrated that the superior court abused its discretion in this regard.

## V. CONCLUSION

Because Valerie failed to prove that the superior court's findings of fact were clearly erroneous, or that the court abused its discretion in making the custody modification, we AFFIRM the superior court's decision.

---

13. *McQuade v. McQuade,* 901 P.2d 421, 426 (Alaska 1995) (quoting *Craig,* 639 P.2d at 308 (Rabinowitz, C.J., concurring)).

14. *McQuade,* 901 P.2d at 426 (internal citations omitted). *See also Evans v. Evans,* 869 P.2d 478, 482 (Alaska 1994).

15. 901 P.2d at 426.

