*1187
 
 OPINION
 

 CARPENETI, Chief Justice.
 

 I. INTRODUCTION
 

 A couple lived together briefly in New Mexico and then separated, with the man moving permanently to Alaska. Shortly after he moved, the woman discovered that she was pregnant and gave birth to a son. The child had no contact with his father for the first three years of his life. At his paternal grandmother's initiative, the child then visited his father in Alaska several times over a three-year period, including a year-long visit during which he attended kindergarten in Alaska. After the boy returned to New Mexico, the boy's father filed for legal and primary physical custody. After a trial, the superior court awarded primary physical custody to the father and summertime visitation to the mother. Legal custody as to schooling decisions was awarded to the father. Legal custody as to all other decisions was awarded jointly to the mother and father. The mother appeals. ‘
 

 II. FACTS AND PROCEEDINGS
 

 A. Facts
 

 Terrance V. was born in New Mexico in 2002 to Stephanie W. and Maxwell V.
 
 [1]
 
 His parents have never married and lived together only briefly, for about six months. Stephanie, a nurse, has a history of childhood sexual traumas and has been diagnosed with Post Traumatic Stress Disorder; she claimed that she was raped during her pregnancy and that a man broke into her home and attempted to rape her daughter. She has two daughters from two previous relationships. Both girls are in therapy and live with their mother. Maxwell, a plumber, has several prior criminal convictions for which he served several years in jail.
 

 Before Terrance was born Maxwell left for Alaska and never returned. Stephanie testified that "[Maxwelll seemed to disappear" after Terrance was born. He had no contact with Terrance during the first three years of his son's life.
 

 Maxwell's mother also lived in New Mexico. After Terrance was born, Stephanie began attending nursing school and occasionally dropped Terrance off at his grandmother's for childcare.. In 2005, Terrance's grandmother brought him to Alaska to meet his father, with Stephanie's permission. When Terrance first arrived he acted out and required strict parenting. He responded very well to this regime, transforming, in the words of a neighbor, from "an out of control kid" to "a very sweet little boy."
 

 Terrance visited his father again in 2006 and 2007. In 2008, the parties arranged for Terrance to spend his first year of school in Alaska. Shortly after he arrived in Alaska, school records documented sexual .misbehavior on his part. During Terrance's year in Alaska, his kindergarten teachers noted several incidents, most near the beginning of the school year, in which Terrance behaved aggressively toward other students. His behavior improved as the year progressed: His report card at the end of the year showed that "he met all of the criteria for being a successful kindergarten student" except for counting skills, and his teacher reported that "the rough patches" experienced at the beginning of the year were "always handled appropriately" by Maxwell.
 

 After returning to Ngw Mexico, Terrance did not want to sleep by himself and wet the bed. Stephanie testified that Terrance told his sister that his father had shown him a picture of a naked girl. Stephanie filed a complaint with the police, who interviewed Terrance, Stephanie, and her daughters. Terrance stated that his father had shown him a photo of a naked girl, and that Maxwell had told him that if Terrance returned to Alaska, "he would get a girl to show him her privates." Terrance was sexually aggressive toward his. sister and engaged in other age-inappropriate sexual behavior.
 

 Later, Stephanie made a second complaint to the police. The police report says that Stephanie reported that Terrance said his father had shown him a video of a young girl having sex with a man. Terrance confirmed this with the interviewing officer. During an interview with a forensic interviewer Ter
 
 *1188
 
 rance said that his father spanked him with a belt, leaving marks, and that his father had shown him a picture of a naked girl and pornographic movies, standing behind him and holding his eyes open during the movies.
 

 In school, Terrance was aggressive toward other children. His teacher filed a Child Protective Services report as his behavior indicated that he was "sexually knowledgeable" and she "was concerned that he might be in trouble." In school, Terrance was continually disorganized and had problems relating to other students. His reading level was below average, which his teacher attributed in part to not reading at home.
 

 His teacher tried communicating with Stephanie about Terrance's problems, but stopped doing so because of Stephanie's "er-ratie responses and ... frightening interpretations, she just blew everything out of proportion." She reported seeing Stephanie "pitch fits in the hallway" and hearing her "announce to everyone within hearing range that her son hald] been sexually abused," and she feared that Stephanie "was not stable."
 

 In January 2010, due to Terrance's behavioral issues and his problems at school, Stephanie brought Terrance to a child and family therapist. The therapist concluded that Terrance had Attention Deficit Hyperactivity Disorder (ADHD) and that he had been exposed to pornography, which contributed to Terrance's inappropriate sexual behavior. Terrance told the therapist that Maxwell had shown him' pornographic pictures and touched him in a questionable manner while bathing him. The therapist was uncertain as to whether Terrance had ever beén inappropriately touched. During one counseling session, Maxwell called Terrance and the call was placed on speakerphone. Though his conversation with Terrance was appropriate, Maxwell told Stephanie he was going to send something in the mail that would "hurt her and her family," a statement Stephanie interpreted as a threat.
 

 Terrance also underwent a neuropsycho-logical evaluation. The evaluation concluded that there were "no major 'red flags' in terms of emotional or even behavioral functioning" but suggested family therapy so that Stephanie could "function at her best as a parent," and mentioned that "high-quality social work seems essential," in particular a social worker who "will [] get along with [Terrance's] mother."
 

 B. Proceedings
 

 In November 2009, Maxwell filed in Alaska for sole legal and primary physical custody of Terrance. Stephanie asked for the same. Superior Court Judge Eric Smith held a three-day hearing in November and December 2010. Judge Smith heard from both parents; Terrance's teacher; Maxwell's girlfriend, employer, and former landlord; and the child therapist who had treated Terrance. During the proceedings, Stephanie testified that she felt "Terrance was sexually abused, that he has had sex ... and I think his dad is responsible." Terrance's teacher testified that Maxwell dealt with Terrance well. Maxwell's landlord reported that Maxwell was a conscientious and loving parent who dealt well with situations in which he had to discipline and care for Terrance. A small portion of the testimony from Stephanie and Maxwell covered child support, with the parties generally agreeing that Maxwell had sent approximately $3,000 since Terrance's birth..
 

 The child and family therapist testified that Stephanie was a fretful and overprotective mother, whose history of sexual abuse engendered anxiety over certain behaviors. While feeling that it is "unusual that pornography would result in th{is] level" of inappropriate behavior, he did not believe that Terrance's story was coached as it remained consistent throughout his sessions.
 

 On January 5, 2011, the superior court issued its findings as to the "best interests of the child" factors in accordance with AS 25.24.150(c). While finding the allegations of sexual abuse "very troubling," the superior court found that Stephanie had not proven this abuse and believed instead that "to a large extent, the behavior is the result of the many changes and pressures [Terrance] felt upon his return to his mother's house, not the least of which was the fact that ... [Stephanie] often badly overreacts to stressful or difficult situations."
 

 
 *1189
 
 The superior court found that the factor of continuity favored Maxwell, as Stephanie's cireumstances were "more fluid" while Maxwell's home and lifestyle were "relatively stable." The court noted that Stephanie's intense work schedule and long daily commute was very hard on the family and could be a roadblock to proper parenting. . The court also found that Maxwell's comment to Stephanie during the conference call with Terrance and his therapist referred to a legal action rather than a threat of physical harm. The court concluded that Stephanie was "very unlikely to foster a relationship with [Maxwell]" due to her anxiety relating to alleged sexual abuse and threats.
 

 Overall, the superior court found that "[Maxwell] was better able to meet [Ter-rancel's needs" and that it was in Terrance's best interests for Maxwell to have primary physical custody. However, the court awarded sole legal custody to Maxwell only as to school issues and granted joint legal custody as to all other matters. The superior court denied Stephanie's motion for reconsideration.
 

 . Stephanie appeals, asserting the superior court (1) committed clear error in finding that Terrance had not been sexually abused; (2) improperly used Stephanie's good faith assertion of sexual abuse and her response to Maxwell's threat against her in awarding custody to Maxwell; (8) did not properly weigh the sibling bond between Terrance and his half-sisters; and (4) failed to properly consider the fact that Maxwell had not paid child support for most of Terrance's life.
 

 III. STANDARD OF REVIEW
 

 "The trial court has broad discretion in deciding child custody disputes."
 
 [2]
 
 We will not set aside a custody determination unless a review of the entire record shows that the controlling findings of fact are clearly erroneous or the trial court has abused its discretion.
 
 [3]
 
 "A finding of fact is clearly erroneous only when a review of the entire record leaves us with a definite and firm conviction that the trial court has made a mistake."
 
 [4]
 
 "An abuse of discretion has occurred if the trial court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."
 
 [5]
 

 IV. DISCUSSION
 

 A. The Superior Court Did Not Clearly Err In Finding That Terrance Was Not Sexually Abused By His Father.
 

 After considering the conflicting evidence, the superior court found that Stephanie had not proven that Maxwell had sexually abused Terrance. As to the allegations of sexual abuse, we agree with the superior court that "[this is a very troubling situation." However, a review of the record does not indicate that the superior court's findings are clearly erroneous.
 

 Stephanie relies heavily on the testimony of Terrance's therapist to support her argument. The therapist testified that it was his belief that Terrance had "experienced sexual abuse resulting in inappropriate sexual behavior," and he concluded that the abuse "happened in Alaska" based on "reports from the school in Alaska."
 

 In reaching its conclusion, the superior court considered testimony from multiple sources in Alaska and New Mexico. Importantly, the superior court carefully weighed the testimony of Terrance's therapist, noting inconsistencies in the testimony and the therapist's failure to connect Maxwell to Terrance's behavior.
 
 [6]
 
 The court also found
 
 *1190
 
 credible both Maxwell's and his girlfriend's testimony regarding sexual materials and behavior in their household.
 

 The superior court elaborated on its deliberations during the proceedings:
 

 I take this stuff really seriously. I have way too many sexual abuse of a minor cases to ever, ever, ever minimize the possible impact on an eight year old kid of sexual abuse. This is really serious.
 

 [[Image here]]
 

 And they're serious allegations and I just want to make it clear to both parents that I'm not messing around here and if there's an issue I'm going to make sure I do something about it. I just have too many cases like this and I see too many kids get too badly messed up by this stuff. So I don't want to mess around here at all but I need to be really clear because the severity of the allegations is sufficient that I need to know exactly what is going on here. All right?
 

 ~ Facing a difficult factual issue, and having considered all of the testimony and evidence on both sides of the issue, the superior court concluded that "[Stephanie] has not proven by a preponderance of the evidence that [Maxwell] sexually abused [their child]" and that "neither party was able to prove by a preponderance of the evidence just what has led [Terrance] to act out as he has."
 

 The superior court did not clearly err in declining to rule in Stephanie's favor. It is not our role to reweigh the evidence, and credibility determinations are the province of the trial court.
 
 [7]
 
 The superior court is in the best position to evaluate the evidence before it, taking due account of the demeanor and credibility of witnesses. While this is a difficult case, we are not left with a definite and firm conviction that a mistake has been made. The superior court took great pains to explain its reasoning, which was supported by the record. Accordingly, we affirm the superior court's findings regarding the alleged sexual abuse.
 

 B. The Superior Court Must Reconsider The "Close And Continuing Relationship" Factor.
 

 Stephanie asserts that the superior court erroneously considered her unwillingness to encourage a close and continuing relationship with Maxwell in violation of AS 25.24.150(c)(6).
 
 [8]
 
 She argues that "good faith" reporting of a threat and possible child sexual abuse should not be used to punish her. She argues that her claim, although ultimately rejected by the superior court, was made in good faith and that under AS 25.24.150(c)(6) the court is precluded from considering her unwillingness to facilitate a relationship between Maxwell and Terrance.
 

 As written, the statute restricts the court from considering a parent's unwillingness to facilitate and encourage a relationship between the child and the other parent "if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child."
 
 [9]
 
 An affirmative finding must be made on both the actual existence of abuse and the risk of danger.
 
 [10]
 
 
 *1191
 
 Once that finding is made, then the superior court must ignore the factor; that is, it must not hold against a parent an unwillingness to encourage a relationship with a parent shown to have engaged in sexual abuse or domestic violence. But the statute is silent -on the procedure to be followed if the court finds that abuse has not been shown. Here, the superior court found that Stephanie did not "show that the other parent ... sexually assaulted or engaged in domestic violence against the ... child."
 

 How a superior court should analyze the "willingness to allow a close and continuing relationship" factor once it decides the factual dispute concerning sexual abuse or domestic violence against the reporting parent is an issue that we have not previously confronted. Stephanie argues that it would be bad policy to hold her good faith belief that Maxwell sexually abused Terrance against her, in analyzing her willingness to allow a close and continuing relationship between Terrance and Maxwell. She argues that "no parent in their right mind would ever make a good faith report of domestic violence or sexual abuse, because that ... report would be used to remove a child from the reporting parent's custody and to place the child with the ... parent who was accused of wrongdoing." Here, the superior court acknowledged that the allegations of sexual abuse were "troubling" and that neither party had been able to demonstrate what had caused Terrance to act out sexually. The superior court also noted that Stephanie had adduced expert opinion testimony from "a highly experienced forensic interviewer of children" and from a children's counselor who were generally supportive of Stephanie's suspicions.
 

 In light of the apparent good-faith basis of Stephanie's allegations, we conclude that the superior court should re-weigh the "willingness to allow a close and continuing relationship" factor. On remand, the court should not consider this factor against Stephanie unless she has continued her unwillingness to facilitate such a relationship in the period after the superior court made its evidence-based finding that Maxwell had not abused Terrance.
 

 C. The Superior Court Did Not Err In Its Consideration Of The Importance Of Maintaining Sibling Bonds.
 

 In considering Terrance's best interests the superior court mentioned that Terrance had two half-sisters with whom he "unquestionably" had a bond, but did not find that bond to be an overriding factor in the best interests analysis. Stephanie disputes the superior court's handling of sibling bonds on two grounds. First, Stephanie argues that onee the superior court found that there was a bond between Terrance and his sisters, McQuade v. McQuade
 
 [11]
 
 requires that the court "make clear findings that separating these siblings was 'clearly required or 'nee-essary.'"
 

 But McQuade does not go this far. In McQuade, the appellant argued in a custody dispute that the superior court gave too much weight to sibling bonds and not enough weight to parental bonds.
 
 [12]
 
 In that case we "declined to adopt a rigid standard for weighing the importance of maintaining sibling bonds in custody disputes, and ... instead articulated a more flexible approach,"
 
 [13]
 
 which is that
 

 [clonsideration should be given to the desirability of not separating the children unless their welfare clearly requires such a course. As in other facets of the difficult problems confronting a trial judge in custody matters, there is no hard and fast rule. The question of whether or not it is necessary to separate children must depend upon the facts and cireumstances of each particular case.[
 
 14
 
 ]
 

 
 *1192
 
 In short, McQuade does not require that the superior court make any findings, rather, McQuade establishes that the trial court has substantial discretion when considering and weighing sibling bonds. Another case, Craig v. McBride,
 
 [15]
 
 makes this clear:
 

 [The] standard does not require a showing of "necessary" or "compelling" reasons in order for a trial court to separate siblings. Rather, we prefer to accord trial judges the necessary discretion to best respond to the myriad of factual settings which will invariably arise in custody matters, at all times cognizant that it is the best interests of the child which is the paramount consideration. Though maintaining sibling relationships will typically be in the best interests of the child, cases will undoubtedly arise where the best interests of the child dictate otherwise.[
 
 16
 
 ]
 

 The superior court was required to consider the best interests of the child, including any sibling bonds. It was not required to make the specific findings urged by Stephanie.
 

 Relatedly, she argues that the superior court failed to accord proper weight to the sibling bonds while focusing on and giving great weight to the "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."
 
 [17]
 

 We have already considered in the previous section the "close and continuing relationship" factor. With regard to Stephanie's argument that the superior court gave too little weight to the importance of sibling bonds, her argument is not persuasive. Craig v. McBride is again instructive:
 

 Were our policy in regard to keeping siblings together to override all other indications of the child's best interest, a parent with a child who is either a step- or half-sibling of the child in dispute would invariably obtain custody. Such a result does not comport with the fundamental premise that trial courts enjoy wide discretion in ascertaining, by reference to AS 25.24.150, the best interests of the child.{
 
 [18]
 
 ]
 

 The superior court has wide discretion to ascertain a child's best interests and to weigh the best interests factors. Here, the superi- or court acknowledged Terrance's sibling bonds but found them to be "of lesser importance than the other custody factors." A review of the record reveals little evidence that sibling bonds were of overwhelming importance to Terrance or to his well-being. Accordingly, weighting sibling bonds less than other factors was not an abuse of discretion.
 

 D. The Superior Court Did Not Award Custody In Violation Of AS 25.20.110(b) But Did Fail To Consider Maxwell's Failure To Pay Child Support Under The Continuity And Stability Factor.
 

 Stephanie argues that the superior court erred by not considering Maxwell's failure to pay child support before awarding him primary physical custody as required by AS 25.20.110(b).
 
 [19]
 
 In support of her argument she (1) points to excerpts of Maxwell's statement that he had sent only about $3,300 in support since Terrance's birth, (2) points to trouble paying the bills, and (8) points to the fact that her nursing degree took longer than anticipated because she had to support her children. But even accepted as true, these facts do not establish a violation of AS 25,20.110(b).
 

 The statute makes clear that "the court shall consider the past history of the
 
 *1193
 
 parents with respect to their compliance with . support orders or agreements."
 
 [20]
 
 Stephanie correctly points out that "(whether a support order exists or not, '[a]l parent is obligated both by statute and at common law to support his or her children'"
 
 [21]
 
 But the purpose of AS 25.20.110(b) is narrow; it counts noncompliance with court orders or voluntary agreements against the noneompli-ant parent who seeks custody. In this case, Maxwell was never subject to a support order or agreement. Therefore, he is not a noncompliant parent seeking custody and the issue was not important to the custody determination.
 

 Although Maxwell's obligations under AS 25.20.110(b) were not relevant to the custody determination, we are troubled by the reliance on Maxwell's more stable economic status compared to Stephanie's long commute and hard working hours while ignoring Maxwell's failure to pay more than $3,800 in child support over the course of his child's life. Here, the superior court weighed Stephanie's 140-mile round trip commute and her four weekly 12-hour shifts (from 6:00 a.m. to 6:00 p.m.) against her in reviewing the stability factor, determining that her work schedule "[was] very hard on all of them, and provide{d] some roadblocks in terms of her working with the kids on homework and the like." Given that Maxwell's failure to pay child support was likely a contributing factor to Stephanie's grueling work schedule, we are puzzled by the superi- or court's conclusion that Stephanie's "circumstances are more fluid, as the children have to spend a significant amount of time away from their home to accommodate [Stephanie's] work schedule" and that the stability factor "therefore favors [Maxwell.]"
 

 A parent has a general statutory and common law duty to support a child.
 
 [22]
 
 In light of this obligation, we remand to the superior court to reconsider the continuity and stability factor taking account of Maxwell's failure to provide any meaningful monetary support for Terrance and Stephanie's efforts to provide economically for her children.
 

 v. CONCLUSION
 

 Because Stephanie has not shown that the superior court's findings on the sexual abuse issue were clearly erroneous, we AFFIRM the superior court's finding that Terrance had not been sexually abused by Maxwell. Because the superior court did not err in its consideration of sibling bonds, we AFFIRM the superior court's conclusion in this respect. But we REMAND the custody issue for a new consideration of the best interests of the child in two respects: (1) Because Stephanie brought her allegations of sexual abuse against Maxwell in good faith, we REMAND for reconsideration of the "close and continuing relationship" factor in accordance with this opinion; and (2) because the court did not discuss Maxwell's ongoing obligation to support Terrance, we REMAND for consideration of the continuity and stability factor in accordance with this opinion.
 

 CHRISTEN, Justice, not participating.
 

 [1]
 

 . We use pseudonyms throughout this opinion to protect the privacy of the persons involved.
 

 [2]
 

 . Melendrez v. Melendrez, 143 P.3d 957, 959 (Alaska 2006).
 

 [3]
 

 . Id. (citing Chesser-Witmer v. Chesser, 117 P.3d 711, 715 (Alaska 2005).
 

 [4]
 

 . Evans v. Evans, 869 P.2d 478, 479 (Alaska 1994) (citing Money v. Money, 852 P.2d 1158, 1161 (Alaska 1993)).
 

 [5]
 

 . Id. at 479-80 (citing McDanold v. McDanold, 718 P.2d 467, 468 (Alaska 1986)).
 

 [6]
 

 . For example, Terrance never told his therapist that Maxwell forced him to look at pornography. The therapist "did not seem to give much credence to the allegation of inappropriate touching during a bath." The therapist testified that "it was very unusual for a child to exhibit the type of behavior exhibited by Terrance based on only
 
 *1190
 
 being exposed to pornographic materials three times over the course of a year."
 

 [7]
 

 . Millette v. Millette, 177 P.3d 258, 261 (Alaska 2008).
 

 [8]
 

 . AS 25.24.150(c)(6) provides, in relevant part: In determining the best interests of the child the court shall consider ... the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child; ...
 

 [9]
 

 . AS 25.24.150(c)(6).
 

 [10]
 

 . As we stated in Puddicombe v. Dreka:
 

 Once the trial court makes an evidence-based finding that domestic violence occurred, however, it should explicitly address whether or not the parent is a continuing threat to the health and safety of the other parent of the children prior to relying on the parent's willingness to foster a relationship under AS 25.24.150(c)(6).... [The superior court should make findings as to whether [the parent] represents a continuing danger to the
 
 *1191
 
 health and safety of [the children]. If the court finds that [the parent] does represent such a danger, then it should revisit the custody issue without relying on AS 25.24.150(c)(6).
 

 Puddicombe v. Dreka, 167 P.3d 73, 77 (Alaska 2007); accord Williams v. Barbee, 243 P.3d 995, 999 n. 5 & 6 (Alaska 2010).
 

 [11]
 

 . 901 P.2d 421 (Alaska 1995).
 

 [12]
 

 . Id. at 425.
 

 [13]
 

 . Id.
 

 [14]
 

 . Id. (quoting Nichols v. Nichols, 516 P.2d 732, 736 (Alaska 1973)).
 

 [15]
 

 . 639 P.2d 303 (Alaska 1982).
 

 [16]
 

 . Craig, 639 P.2d at 306.
 

 [17]
 

 . AS 25.24.150(c)(6).
 

 [18]
 

 . Craig, 639 P.2d at 307.
 

 [19]
 

 . AS 25.20.110(b) provides:
 

 When making a determination relating to child custody under (a) of this section, the court shall consider the past history of the parents with respect to their compliance with the child support payment provisions of temporary or permanent support orders or agreements relating to the child or to other children. Under this subsection, the court may consider a parent's failure to pay child support only if the parent had actual knowledge of the amount of the child support obligation and had funds available for payment of support or could have obtained those funds through reasonable efforts, as determined by the court.
 

 [20]
 

 . Id.
 

 [21]
 

 . Crayton v. Crayton, 944 P.2d 487, 489 (Alaska 1997) (quoting Matthews v. Matthews, 739 P.2d 1298, 1299 (Alaska 1987)).
 

 [22]
 

 . AS 25.20.030; see, eg., Benson v. Benson, 977 P.2d 88, 92 (Alaska 1999).