NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KRIYA D., | ) | |
| | ) | Supreme Court No. S-18270 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-14-02004 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| SCOTT C., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1942 – January 25, 2023 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Thomas I. Temple, Judge.

Appearances: Margaret O'Toole Rogers, Foster & Rogers, LLC, Fairbanks, for Appellant. Eric K. Ringstad, Downes, Tallerico & Schwalm Law Firm, LLC, Fairbanks, for Appellee.

Before: Maassen, Borghesan, and Henderson, Justices. [Winfree, Chief Justice, and Carney, Justice, not participating.]

## I.    INTRODUCTION

A mother appeals the superior court's order modifying visitation to allow more contact between her child and his father. The superior court ruled that more visitation with the father would be in the child's best interests. Acknowledging the father had committed numerous acts of violence against the mother, the superior court found

---

\*        Entered under Alaska Appellate Rule 214.

that he was no longer a threat because he had completed a batterer's intervention program, stopped abusing drugs, and "turn[ed] [his] life around." The court also found that the mother had "alienated" the child against the father. We affirm the superior court's factual findings but hold it was error for the court to consider the mother's unwillingness to encourage a relationship between the child and his father without first determining whether the mother had a good faith belief that the father posed a danger to her or the child. We therefore remand for further proceedings.

## II.    FACTS AND PROCEEDINGS

### A.    Initial Divorce Proceedings

Scott C. and Kriya D. were married in January 2008 and had one child, Dan,[1] born in December 2009. Kriya moved out of the marital home in April 2014. The following month she filed for divorce and sought a domestic violence protective order against Scott. The court granted her a protective order the same day.

Scott moved for interim sole legal and physical custody of Dan in June 2014. In his briefing Scott alleged that Kriya was abusing alcohol and that a mental health professional had advised the two that Kriya was experiencing bipolar disorder. Kriya denied these claims and alleged that Scott had his own issues with mental health, including depression and heavy marijuana use, which resulted in his admission to the hospital. In September 2014 the parties agreed to share interim legal and physical custody of Dan.

### B.    Custody Investigation

The superior court appointed a child custody investigator, who interviewed and observed the parents and Dan on multiple occasions, spoke with references for each parent, and reviewed related records. The custody investigator's report, filed in May

---

[1]    We use a pseudonym to protect the child's identity.

2015, was critical of both parents. The investigator criticized instances of poor judgment by Kriya. The investigator also concluded that "it is more likely than not that [Scott] committed multiple acts of domestic violence." The investigator also found that Scott had "lied or told partial truths" to professionals about his marijuana use and prior mental health issues, and had attempted to misrepresent Kriya's mental health in an effort to manipulate the custody proceedings.

Noting that "[Scott] appears to be providing a stable home for [Dan]," the investigator nevertheless concluded that "the history of domestic violence, the high level of on-going conflict between the parents[,] the father's attempts to discredit and disparage the mother[,] and the father's lack of honesty during this investigation require that the child live primarily with his mother." The investigator ultimately recommended Kriya have sole legal custody and primary physical custody, and Scott have unsupervised visitation every other weekend contingent on Scott's continued participation in violence prevention services, therapy, and abstention from marijuana.

### C.    Trial

A four-day custody trial was held in July 2015. The superior court issued findings in August. It remarked that the evidence presented at trial was consistent with the custody investigator's report. The court found "a long history and an ongoing malicious campaign" by Scott to interfere with Dan and Kriya's relationship, with "innumerable incidences of domestic violence, including threats to kill Kriya." The court found Kriya's testimony credible and Scott's testimony not credible because Scott admitted that he lied to others in hopes of influencing the case.

Due to Scott's history of domestic violence, the court applied the statutory domestic violence presumption and awarded Kriya sole legal custody and primary

physical custody.[2]   Noting that Scott was participating in a batterer's intervention program and was not abusing drugs or alcohol, the court gave Scott unsupervised overnight visitation every other weekend and an additional two hours of visitation each week, to be scheduled in advance with Kriya.[3]   The order authorized Scott to take an additional two-week vacation with Dan upon completing the batter's intervention program.

### D.    Post-Trial Proceedings

In November 2016 Kriya moved to modify visitation to allow Scott only supervised contact with Dan until Scott addressed his mental health issues.  Kriya alleged that Scott did not have contact with Dan for over three months following the court's custody decision, was demonstrating increasingly erratic behavior, and did not complete his batterer's intervention program.[4]   Kriya expressed concern about the impacts Scott was having on Dan, who allegedly told Kriya he "[did]n't want to live this life" and that his "life [was] horrible," leading her to pursue counseling for him.

After a hearing the court ruled on the record that Kriya had shown a substantial change of circumstances due to Scott's behavior and that visitation was detrimental to Dan.  The court issued a temporary order that Scott was to have only supervised visitation:  one evening per week and every other Saturday at a visitation facility or with a mutually agreed upon supervisor.

---

[2]      *See* AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.").

[3]      *See* AS 25.24.150(j) (describing conditions on visitation if parent found to have history of perpetrating domestic violence).

[4]      Scott conceded to the court that he did not complete it.

A few months later in January 2017, Scott moved to modify visitation. The following month Scott was arrested for attempted assault, criminal mischief, and vehicle tampering based on evidence that Scott tampered with Kriya's brake lines. Kriya had contacted the Alaska State Troopers to report that someone had tampered with her vehicle's brakes. Kriya's mechanic reported that the brake lines seemed to have been severed with an external heat source. The mechanic also reported that Scott had visited the shop, inquired about the car, and lied about his relationship to Kriya. When confronted by the troopers, Scott initially declined knowing anything about the vehicle but later admitted he knew about the brake line issue from a protective order Kriya had served on him a few days earlier.[5]

As a result of the arrest the court stayed all unsupervised visitation and ordered that its temporary visitation order would remain in effect, effectively denying Scott's motion to modify. Scott was incarcerated for almost 10 months while his criminal case was pending and did not see Dan during that time. The charges were dismissed after an expert witness retained by Scott produced a report concluding that there was no evidence the brake lines on Kriya's vehicle had been torched and that they appeared to have failed due to wear and tear.

After release Scott continued to have supervised visitation. Sometimes the visits did not occur as scheduled because Kriya arranged for Dan to travel out of state. Scott canceled a scheduled visit only once, due to illness.

---

[5] The protective order petition was based on the alleged brake line tampering.

## E.    Name Change Proceedings

In October 2018 Kriya filed a petition to change Dan's last name, which he shared with Scott, to match Kriya's new last name.[6] As part of the name change process a custody investigator interviewed Dan and filed a report with the court in August 2019. Dan told the investigator he does not talk with Scott on the phone because a previous phone visitation "ended up bad," and reported being worried about Scott's behavior outside of supervised visits, including losing his temper easily, threatening to kill Kriya, and throwing things.  Dan reported that Kriya sometimes talked about Scott in response to Dan's questions; Dan also indicated he knew about the allegedly cut brake lines and believed Scott was responsible.  Dan told the investigator he wanted "to change [his] name because [his] dad has abused [him]" and did not "want to be called by the name of someone who has abused [him]."

A master issued findings of fact and recommendations regarding the name change petition.  The master found that Kriya "influences how [Dan] feels about Scott, but not in a healthy or emotionally supportive way."  Kriya "still holds on to the pain caused by" Scott's domestic violence, the master found, and talked about this pain with Dan.  Seemingly in response to Dan's report that Scott had abused him, the master found that "there is no evidence in this case or the parties['] divorce/custody proceedings that suggests that Scott was ever abusive to [Dan]."  The master found that Kriya's behavior "has actively prejudiced [Dan] against any meaningful relationship with [Scott]."  The master recommended the name change petition be held in abeyance for six months while Dan worked with a therapist or counselor to address his feelings about Scott and the decision to change his name.  The record does not indicate the ultimate result of the name-change proceeding.

---

**6**    *See* AS 09.55.010 (permitting name change upon petition).

## F. 2020 Motion To Modify Custody

In July 2020 Scott moved to modify custody, seeking a graduated unsupervised visitation schedule that would eventually result in weekly rotating physical custody. He alleged a substantial change in circumstances because he had completed a parenting class and a batterer's intervention program, his criminal charges had been dismissed, and he felt Kriya had made "efforts to poison [Dan]'s attitude" about him.

Around the same time, new attorneys appeared on Scott's behalf. Kriya filed a "Notice of Anticipatory Objection to Recusal" arguing that Scott had previously expressed an intention to disqualify the judge by hiring attorneys with whom the judge had formerly shared a law practice, which would deprive Kriya of the judge's six years of experience with the case. The judge recused in November 2020, and a new judge was assigned.

The court held a hearing to determine whether Scott had demonstrated a substantial change of circumstances. Scott and Kriya both testified, as did an Alaska State Trooper who investigated Scott's criminal case and the expert Scott retained in his criminal case. The court found a sufficient change in circumstances to warrant modifying visitation (but not custody): (1) the dismissal of the charges against Scott (which were factored into the denial of Scott's 2017 motion to modify); (2) Scott's sobriety, as shown by two recent hair follicle tests; and (3) what it described as Kriya's efforts to alienate Dan from Scott.[7]

The court held a second hearing to determine what visitation schedule would be in Dan's best interests. Kriya argued that visitation should return to the schedule originally ordered in 2015, with an additional two weeks of summer vacation

---

[7] The court also noted Scott had successfully completed batterer's intervention but found that this did not constitute a change of circumstances because it was contemplated in the original custody order.

because Scott had completed a batterer's intervention program. Scott argued he should receive more visitation because of the trial court's "parental alienation" findings, explaining that "[Dan] needs to spend a lot of time with his father to see that he is not a bad person . . . and in order to repair their relationship."

The superior court found it was in Dan's best interests to increase Scott's visitation up to 108 nights a year. The court ruled that either parent could enroll Dan in counseling; if they did not agree on the counselor, "they can both have a separate counselor, and [Dan] can . . . benefit from extra counseling." Kriya objected to Dan having two counselors, pointing out that she was Dan's sole legal custodian and therefore entitled to control counseling decisions by herself. The court declined to change its ruling.

Kriya appeals.

## III. STANDARDS OF REVIEW

"Superior courts are vested with 'broad discretion' to make child custody decisions."[8] "We will reverse a trial court's resolution of custody issues only if . . . convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[9] An abuse of discretion occurs when the superior court assigns disproportionate weight to some factors, fails to consider factors required by statute, elevates the parents' interests above the child's, or considers impermissible factors.[10] A factual finding is clearly erroneous when our "review of the entire record

---

[8] *Pingree v. Cossette*, 424 P.3d 371, 376 (Alaska 2018) (quoting *Vachon v. Pugliese*, 931 P.2d 371, 375 (Alaska 1996)).

[9] *Id.* at 376-77 (alteration in original) (quoting *Gratrix v. Gratrix*, 652 P.2d 76, 79-80 (Alaska 1982)).

[10] *Id.* at 377.

leaves us 'with a definite and firm conviction that a mistake has been made.' "[11] We review a superior court's statutory interpretation using our independent judgment.[12]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Failing To Give Adequate Deference To Previous Factual Findings.

Kriya contends that the superior court failed to adequately defer to earlier factual findings. She relies almost exclusively on *Gratrix v. Gratrix*, in which we explained that "a court considering a request for custody modification must give deference to the findings made in the original custody determination."[13] This requirement ensures custody modifications are not based solely upon reweighing the evidence presented at the original custody hearing.[14] In *Gratrix* a parent moved to modify custody less than four months after the initial order. The judge "made only passing reference to the prior proceedings," ignored expert testimony, and essentially reweighed evidence.[15]

This case is much different. The order on appeal was made several years after the last order, and the superior court did not so much reweigh the same evidence as consider more recent developments. We do not see an erroneous failure to defer to previous findings.

---

[11]    *Id.* (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008)).

[12]    *Alaska Pub. Def. Agency v. Superior Ct.*, 450 P.3d 246, 251 (Alaska 2019).

[13]    652 P.2d at 81.

[14]    *Id.*

[15]    *Id.* at 78, 81-82.

**B.** **It Was Error To Consider Kriya's Unwillingness To Foster A Relationship With Scott Without Considering Whether Kriya Had A Good-Faith Belief That Scott Posed A Threat.**

In determining custody the superior court must consider each parent's willingness and ability to facilitate a close relationship between the other parent and the child.[16] But the court may not consider this factor if "one parent shows that the other parent has . . . engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child."[17] This exception was "intend[ed] to level the playing field for victims of domestic violence."[18]

The superior court found that although Scott had committed domestic violence against Kriya, Kriya had not shown that Scott continued to endanger her or Dan. The court relied on "the many years where there's been no threat, no danger, . . . the fact that [Scott] has completed batterer's intervention, [and] he is free and has been free of substance[s] for many years." Therefore the court concluded it could consider Kriya's unwillingness to facilitate Dan's relationship with Scott in determining Dan's best interests, and this factor weighed heavily in the court's analysis. Kriya argues the court erred by considering this factor.

We analyzed this factor in *Stephanie W. v. Maxwell V.*[19] In that case a mother's allegations that the father had abused the children were ultimately rejected by

---

[16]     AS 25.24.150(c)(6).

[17]     *Id.*

[18]     *Angelica C. v. Jonathan C.*, 459 P.3d 1148, 1159, 1162 (Alaska 2020).

[19]     274 P.3d 1185 (Alaska 2012).

the courts.[20]  But the allegations were supported by evidence and appeared to have been made in good faith.[21]  Therefore we held that the court could not consider the mother's unwillingness to facilitate the children's relationship with the father unless the unwillingness persisted *after* the court found the abuse had not occurred.[22]  In a subsequent appeal involving the same parties, we explained that good-faith allegations "should not be held against the reporting parent" when the allegations are "relevant to the custody decision and the child's best interests" and "based on supporting evidence."[23] This rule reflects the need to balance two goals:  "the desire of the court to encourage good-faith, objectively credible reports of parental behavior relevant to the custody dispute, and the need to guard against false reports and to consider a parent's actual unwillingness to foster a relationship with the other parent."[24]

In this case the superior court previously found that Scott had an extensive history of domestic violence against Kriya, including death threats.  In 2017 Scott was arrested on suspicion of tampering with Kriya's brake lines.  Although his criminal case was dismissed 10 months later, the dismissal was not a judicial finding that Scott never committed those acts.  It was only in October 2021 that a court found that Scott did not commit the crime and was not a threat to Kriya or Dan.  The court made no attempt to discern whether Kriya had a good-faith belief that Scott posed a threat to her (or Dan) notwithstanding the dismissal of his criminal case.  Under our *Stephanie W.* decisions,

---

[20]     *Id.* at 1189-90.

[21]     *Id.* at 1190-91

[22]     *Id.*

[23]     *Stephanie W. v. Maxwell V.*, 319 P.3d 219, 229 (Alaska 2014).

[24]     *Id.* at 230.

it was error to consider Kriya's "alienation" under AS 25.24.150(c)(6) without finding whether she believed in good faith that Scott posed a threat.[25] On remand the superior court should make this finding in order to determine whether the domestic violence exception under AS 25.24.160(c)(6) applies.

### C. The Court's Factual Findings Were Not Clearly Erroneous.

#### 1. The superior court did not err with regard to findings of child abuse.

Kriya's arguments on the question of Scott's alleged child abuse of Dan are not entirely clear. She appears to argue that the superior court erred by finding that Scott did not abuse Dan, yet the court made no such finding. Although the court found that Scott is not a threat to Dan, it made no specific finding about whether Scott abused Dan in the past.

Alternatively Kriya may mean to argue that the court made a legal error by failing to make a finding of child abuse.[26] Kriya argued before the superior court that Scott threatened Kriya's life in front of Dan. But she did not describe this conduct as child abuse, nor did she explain why classifying Scott's conduct as child abuse rather than domestic violence would affect his visitation.[27] Therefore we review this argument

---

[25]     319 P.3d at 230; 274 P.3d at 1191.

[26]     Kriya cites AS 47.17.290(3), which defines "child abuse or neglect" in part as "mental injury . . . of a child . . . under circumstances that indicate that the child's health or welfare is harmed or threatened," with "mental injury" meaning one "evidenced by an observable and substantial impairment in the child's ability to function."

[27]     *See* AS 25.24.150(c)(7) (requiring court to consider in custody and visitation determinations "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household"); AS 25.24.150(g) (providing for rebuttable presumption against custody by "parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner").

for plain error, which requires a showing that the superior court made an obvious mistake creating a high likelihood of injustice.[28]

Assuming without deciding that it was an obvious mistake not to consider the conduct as child abuse in addition to domestic violence, it is hard to see how that error unfairly prejudiced Kriya. The superior court expressly considered this violent conduct. It reasoned that this conduct happened a long time ago and that Scott had made significant changes since then: he completed a batterer's intervention program, stopped using substances, and was not currently a threat to Kriya or to Dan. It is not at all obvious that if the superior court had expressly found Scott's conduct met the legal definition of child abuse, and not just domestic violence, the court would have reached a different decision about what was best for Dan years later. Therefore we see no reversible error in the court's failure to make a finding that Scott's conduct amounted to child abuse.

2. **The superior court did not clearly err by finding Scott posed no danger to Kriya and Dan.**

Kriya challenges the court's finding that Scott no longer poses a danger to her and Dan. She contends that the finding that Scott "ha[d] been free of substance[s] for many years" was based on just two recent hair follicle tests from February 2021 — evidence too scant to support such a broad finding.[29] She also argues that Scott showed no evidence of overcoming his mental health challenges other than his own testimony,

---

[28] *Parks v. Parks*, 214 P.3d 295, 300 n.12 (Alaska 2009) (holding that failure to consider party's violations of long-term protective order in determining whether domestic violence presumption applied was plain error).

[29] Kriya also points out that Scott claimed his erratic behavior at the start of the case was caused by over-the-counter medications, implying they might not have been caught by the hair follicle test.

and that the superior court should not have taken him at his word when it previously found he had lied about various things.

The superior court found credible Scott's testimony that "he hit rock bottom," "reevaluated his life," and then "made all of the positive changes that we would expect [of] someone who is making a genuine, good faith attempt to turn their life around in order to be a better father and a better citizen." It found that Scott posed no threat because there had been no incidents of violence for many years, he had completed a batterer's intervention program, and he produced two clean hair follicle tests. Although the court did not expressly acknowledge Scott's prior dishonesty, these earlier lies did not preclude the superior court from finding Scott's recent testimony to be credible, and we defer to this credibility assessment.[30] In regard to Scott's history of substance abuse, Kriya's counsel admitted that Scott does not appear to have an ongoing substance abuse problem, based on the evidence presented at the hearing. We do not have "a definite and firm conviction that a mistake has been made."[31]

### 3. The superior court did not clearly err by finding that Kriya was unwilling to foster a relationship between Dan and Scott.

Kriya challenges the superior court's factual finding that she "alienated" Dan from Scott. Kriya maintains that it was Scott's own conduct that alienated Dan, rather than any improper conduct by her. Although this is a close call, we cannot say that the superior court clearly erred in finding that Kriya had discouraged, rather than

---

[30] *Jaymot v. Skillings-Donat*, 216 P.3d 534, 539 (Alaska 2009) ("We give 'particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence' " (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005))).

[31] *Pingree v. Cossette*, 424 P.3d 371, 377 (Alaska 2018) (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008)).

encouraged, Dan's relationship with Scott. Yet as explained above, the court cannot consider this finding against Kriya unless it concludes, on remand, that she lacked a good-faith belief that Scott posed a threat to her or Dan.

The superior court's finding rested heavily on findings made by the master in the course of the name-change proceeding. Quoting the master's report, the superior court noted that "[Dan]'s decision to no longer share the same last name as his father was not entirely derived of his own feelings about or personal experience with [Scott]. Rather they are the result of having learned from [Kriya] how badly he treated her."

If this and similar findings by the master were the only basis for the court's finding, we might agree with Kriya. Dan was born in 2009 and was almost 10 years old at the time of the name-change proceeding. Kriya testified that she worked with a counselor to appropriately answer Dan's questions about his father's absence from his life and why his father had been in jail. This testimony was supported by a custody investigator's report. The fact that Dan, at 10 years old, may have formed a negative impression of Scott is not in itself evidence that his mother had inappropriately alienated the child from his father.

Yet there is other evidence supporting the court's finding. The court emphasized that Kriya had falsely told the master during the name change proceeding that she was Dan's "only parent"[32] and had also made arrangements for Dan to travel out of state without notifying Scott, facilitating communication during these travels, or

---

[32] Kriya argues there is no evidence the statement was willful deception; however we defer to the master and the superior court, who had the opportunity to observe Kriya's demeanor, on the question of Kriya's state of mind in making this statement. *See Jaymot*, 216 P.3d at 539.

offering make-up visits.[33]  Given this evidence, we cannot say that the superior court clearly erred in finding that Kriya discouraged Dan's relationship with Scott.

**D.     It Was Not An Abuse of Discretion To Allow Each Parent To Hire A Counselor For Dan.**

Scott testified that he wanted a different therapist for Dan, suggesting he and Kriya could mutually agree on a therapist instead.  The superior court ordered that "if [the] parties don't agree to a counselor, they can both have a separate counselor, and [Dan] can have counseling by two counselors and benefit from extra counseling."

Kriya argues that as Dan's sole legal custodian she has the authority to determine whether to enroll Dan in counseling and with whom.  She maintains it was error for the court to allow Scott to enroll Dan in additional counseling with a therapist of Scott's choice.

"The superior court has broad discretion in making a legal custody determination."[34]  For example, we have upheld a "modified form of joint legal custody" in which one parent was awarded "final decision-making authority should [the parents] fail to agree."[35]  The superior court's decision here can be viewed as a very limited grant of joint legal custody on the issue of counseling for Dan, which is within the court's discretion.

Kriya argues that this decision is against Dan's best interests because it risks redundancy, inconsistency, and turning "what is supposed to be a child-centered therapeutic process" into another contested arena between the parents.  These are valid

---

[33]     Kriya does not justify the missed visits and poor communication in her brief other than by arguing that the court should not have held this conduct against her due to Scott's history of domestic violence.

[34]     *Ronny M. v. Nanette H.*, 303 P.3d 392, 405 (Alaska 2013).

[35]     *Id.* at 404-05.

concerns, but the arrangement could also be beneficial to Dan by increasing the likelihood that each parent will be supportive of his counseling. We cannot say that the court abused its discretion here.

## V.    CONCLUSION

We VACATE the superior court's visitation order and remand for further proceedings consistent with this opinion.