NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| CARI JO ROUSSELLE, f/k/a Cari Jo Ward, | ) ) Supreme Court No. S-18645 |
| Appellant, | ) ) Superior Court No. 3AN-17-06278 CI ) |
| v. | ) MEMORANDUM OPINION ) AND JUDGMENT* |
| CHARLES BRITT WARD, JR., | ) ) No. 2028 – May 1, 2024 |
| Appellee. | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Thomas A. Matthews, Judge.

Appearances: Cari Jo Rousselle, pro se, Anchorage, Appellant. No appearance by Appellee Charles Britt Ward, Jr.

Before: Maassen, Chief Justice, and Borghesan, Henderson, and Pate, Justices. [Carney, Justice, not participating.]

## I. INTRODUCTION

A mother appeals the superior court's denial of her motion to modify legal and physical custody of her daughter. The mother also alleges judicial bias. Observing no evidence of bias, and no error or abuse of discretion in the superior court's denial of the custody modification motion, we affirm in all respects.

---

\* Entered under Alaska Appellate Rule 214.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

Cari Jo Rousselle and Charles Britt Ward, Jr. were married in April 2005. They have one child together, born in 2006.  The couple separated in January 2017 and divorced in December 2017.  The parties made several agreements related to custody and visitation during that time period, which were adopted by the court and incorporated into their final decree of divorce and custody order.  The parties' agreements were informed by concerns related to a May 2017 suicide attempt by Rousselle.  Ward would also testify in subsequent litigation that Rousselle had long struggled with addiction to multiple prescription medications, including opiates, and that this impacted her relationship with, and ability to parent, their child.  Reports from the Alaska Prescription Drug Monitoring Program, admitted during the course of subsequent litigation, confirmed Rousselle received a large volume of controlled substances throughout her marriage to Ward.

Under the terms of the parties' original custody order, they shared joint legal custody, and Ward had primary physical custody, of their child.  Rousselle was permitted reasonable visitation provided that Ward and the child agreed to it.  Ward later testified the parties agreed to this because the child refused to spend time with Rousselle due to her suicide attempt and her difficulties with substance abuse.  The child was 11 at the time of Rousselle's suicide attempt.  While disputing the cause of the breakdown in her relationship with the child and blaming Ward for their estrangement, Rousselle agreed that this was the time period that her relationship with the child broke down.

The parties' custody agreements, and the court's custody order incorporating those agreements, anticipated that Rousselle would be moving out of Alaska.  Rousselle moved to Nevada in June 2018 and returned to Alaska in June 2020.

## B.  Proceedings

In March 2021 Rousselle moved to modify the original custody order. Rousselle contended that Ward had a history of domestic violence and instability that rendered joint legal custody inappropriate.[1]  She sought sole legal custody and primary physical custody of the child.  She also asserted that her return to Anchorage was a "substantial change in circumstances" sufficient to support modification of custody. Finally, Rousselle argued "[the child's] preference should be given little weight" owing to her belief that the child's custody preference was a product of Ward's manipulation.

Ward opposed Rousselle's motion and maintained that the child was "not ready to engage with" Rousselle.  He further asserted that any attempt to "demand" an "immediate reunification" through pursuit of sole legal and physical custody would "undermine any possibility of a positive life-long-mother-daughter relationship" and would not be in the child's best interests.  He highlighted that the child was in counseling and excelling in school.  After addressing each of the best interest factors, he argued that the motion to modify custody should be denied and that the court "should respect [the child's] mature and well-reasoned refusal to spend time with her mother."

During the course of the litigation, the court referred the case to the State of Alaska Court System's Custody Investigator's Office so that a parenting plan facilitator could interview the child to better understand her preferences.  The child, 15 at this time, reported to the facilitator that she did not feel safe around Rousselle.  She also reported that Rousselle's practice of showing up during her extracurricular activities caused her significant stress, that she did not want anyone to force her to spend time with Rousselle, and that the relationship could potentially improve if Rousselle would stop forcing the matter.

The court denied Rousselle's motion to modify custody in January 2023. It determined that Rousselle's return to Anchorage was "significant" even if it was

---

[1]     *See* AS 25.24.150(g).

likely not "substantial" as a matter of law. Regardless, the court conducted a best interest analysis after reaching this determination.[2] The court concluded that, overall, the statutory best interest factors weighed in Ward's favor.[3] The court ordered that the parties would continue to share joint legal custody, but given the parties' demonstrated difficulty reaching agreement, ruled that Ward would have the "final say" in any disagreement about "major decisions" involving the child.[4]

Midway through the litigation of her custody modification motion, Rousselle sought recusal or disqualification of the superior court judge assigned to her case. The judge denied Rousselle's motion, stating that the court "followed the law, ruled without bias, either actual or apparent, and c[ould] continue to do so in the future." A separate judge reviewing the case affirmed this denial, concluding that Rousselle had not demonstrated bias or an impermissible appearance of bias, "or that other circumstances exist[ed] which require[d] . . . recusal or disqualification."

---

[2]     *See Susan M. v. Paul H.*, 362 P.3d 460, 467 (Alaska 2015) ("Deciding a motion to modify custody or visitation is a two-step process. The superior court must first find that there has been a substantial change in circumstances that justifies revisiting the custody or visitation situation. If there has not been a substantial change in circumstances, the analysis ends. If there has been a substantial change in circumstances, the superior court must analyze the then-current best interests of the children . . . . After considering the then-best interests of the children, the superior court may leave the existing custody and visitation framework in place, modify it in part, or modify it in whole." (citations omitted)).

[3]     *See* AS 25.24.150(c) (listing nine best interest factors for court's consideration in awarding custody).

[4]     While it is unclear to what extent Rousselle is appealing the court's modification of legal custody, we note that the court's decision to name Ward the final decision-maker was well supported by the record and its best interests determination.

Rousselle broadly appeals the superior court's denial of her motion to modify custody and its denial of her recusal motion. We issued a short order affirming the court's ultimate conclusion.[5] We now detail our reasoning in full.

## III. STANDARD OF REVIEW

Trial courts enjoy broad discretion when deciding disputes over child custody and "whether a proposed child custody modification is in the best interests of the child."[6] We will only overrule a best interests determination based on abuse of discretion or where "the fact findings on which the determination is based are clearly erroneous."[7] "A finding of fact is clearly erroneous only when a review of the entire record leaves us with a definite and firm conviction that the trial court has made a mistake."[8] An abuse of discretion exists "if the trial court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[9]

We review de novo whether a judge appeared biased under an objective standard,[10] and we review the denial of a motion to recuse or disqualify a judge for abuse of discretion.[11]

---

[5]    No. S-18645 (Alaska Supreme Court Order, Jan. 19, 2024).

[6]    *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018).

[7]    *Id*. (quoting *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011)).

[8]    *Id*. (quoting *Stephanie W. v. Maxwell V.*, 274 P.3d 1185, 1189 (Alaska 2012)).

[9]    *Id*. (quoting *Stephanie W.*, 274 P.3d at 1189).

[10]    *Downs v. Downs*, 440 P.3d 294, 297 (Alaska 2019).

[11]    *Greenway v. Heathcott*, 294 P.3d 1056, 1062 (Alaska 2013); *Phillips v. State*, 271 P.3d 457, 459 (Alaska App. 2012).

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion When It Denied Rousselle's Motion To Modify Custody.

Rousselle contends that the superior court abused its discretion in denying her motion to modify custody.[12] She disputes many of the court's factual findings related to the best interest factors and disagrees strongly with the court's ultimate determination that maintaining the original physical custody order would serve the best interests of the parties' child. But we see no clear error in the court's factual findings or abuse of discretion in its weighing of the best interest factors and denial of Rousselle's custody modification motion.[13] We thus affirm the court's custody order.

The superior court's analysis and weighing of the statutory best interest factors was thorough and well reasoned. Alaska Statute 25.24.150(c) outlines the non-exclusive list of factors that a court must consider in making custody determinations.[14]

---

[12] To the extent Rousselle also intends to challenge the court's denial of a separate motion she brought to modify the parties' property settlement, the record does not support any grounds for such a challenge. In March 2022 Rousselle sought to modify the parties' property settlement underlying the December 2017 divorce decree. But at the time the parties presented the settlement to the court, Rousselle testified that she had enough time to consult with her lawyer, that the agreement's property terms were "fair and equitable," and that she was not influenced by fraud or duress or "under the influence of any drugs or alcohol" before signing the agreement. The superior court denied Rousselle's motion to modify the property settlement in January 2023. To the extent Rousselle challenges that order in this appeal, we see no basis for such a challenge.

[13] We note that the superior court ruled both that Rousselle had not presented a "substantial" change in circumstances sufficient to modify custody, and alternatively, that the requested custody modification did not serve the child's best interests. Given that we affirm the court's best interests analysis, we need not address its determination regarding substantial change in circumstances.

[14] When considering the best interest factors under AS 25.24.150(c), a court must ultimately take into account "only those facts that directly affect the well-being of the child." AS 25.24.150(d).

Here, the court recognized the love existing between each of the parents and the child. It also acknowledged that while the child's unmet emotional needs primarily related to Rousselle, Ward's difficulty with communication also impacted the child. But the court found that Ward was better able to meet the child's needs. The court recognized Ward's work over time to address the communication issues between himself and the child in a professional therapeutic environment, and his demonstrated ability to meet the child's needs as her primary caregiver of five years. The court further found that the child's need for stability and continuity favored Ward's continued custody of the child, who "by all reports . . . is a bright, engaging, and emotionally intelligent young [person]." And the court credited Ward's demonstrated willingness to foster a relationship between Rousselle and the child, while Rousselle "actively discourage[d] and attack[ed] [the child]'s relationship with her father."[15] Here and elsewhere the court's careful reasoning is supported by the record and well within its discretion.

The court also gave weight to the child's mature and consistently emphasized preference to remain in her father's custody. It noted that the child "clearly stated" that she did not want a relationship with Rousselle at present, and that she wanted her mother to "back off." This understanding of the child's preferences was consistent with testimony and notes from her counselors, statements the child made to the parenting plan facilitator, and a communication the child had recently sent to Rousselle. Although Rousselle suggests that the court erred in giving weight to the child's preferences, we see no error or abuse of discretion.[16] Indeed, given the context of this case, including the child's age and maturity, it would likely have been an abuse

---

[15] The court further considered whether either party had committed acts of domestic violence that would implicate the child's best interests and found that "[b]oth parties have displayed aggressive and disturbing behavior," but that "neither party [was] deemed to have a history of domestic violence."

[16] *See Bonjour v. Bonjour*, 592 P.2d 1233, 1240 (Alaska 1979) (court should respect the beliefs of mature child when evaluating child's best interests).

of discretion for the court *not* to consider the child's preferences.[17]  Here the court appropriately gave weight to the child's well-reasoned and clearly articulated preferences.

The court further found that Rousselle's unresolved substance abuse and mental health challenges negatively impacted the child and weighed against custody modification.  Although Rousselle has consistently denied substance abuse issues, the record contains ample evidence supporting the court's findings.  The court cited Ward's testimony and the child's statements that Rousselle's substance use significantly impacted them and their home life.  For instance, the child reported to the parenting plan facilitator that she did not feel safe around Rousselle, and that if she could give her mother one piece of advice it would be "drugs are bad."  These statements are consistent with reports from the Alaska Prescription Drug Monitoring Program, which indicate a large volume of controlled substances were dispensed to Rousselle throughout her marriage to Ward.  In addition to these findings regarding substance abuse, the court expressed great concern regarding Rousselle's mental health.  These concerns were based not only upon Rousselle's prior suicide attempt, but also upon evidence about Rousselle's behavior over time toward Ward and the child and upon Rousselle's own statements and behavior during the course of litigation before the court.

Overall we observe that the superior court carefully considered and weighed the evidence related to the child's best interests, and we will not reweigh that evidence.[18]  Moreover, the court's ultimate decision denying Rousselle's motion for

---

[17]    *See  id*; AS  25.24.150(c)(3)  (court  must  consider  mature  child's preferences when deciding child's best interests).

[18]    *See Hannah B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 289 P.3d 924, 930 (Alaska 2012) ("[W]e will not reweigh evidence when the record provides clear support for the superior court's ruling.").

custody modification was well reasoned and supported by the court's findings. Seeing no clear error or abuse of discretion, we affirm.

**B.    The Superior Court Did Not Err Or Abuse Its Discretion In Denying Rousselle's Recusal Motion.**

Rousselle contends that the judge assigned to her case was biased against her and that the judge should have recused himself from the matter upon her motion. Whether we conduct a de novo review for the appearance of bias,[19] or a review of the judge's denial of Rousselle's recusal motion for abuse of discretion,[20] we conclude Rousselle's arguments regarding bias are without merit.

The record simply does not support Rousselle's allegations of bias. For instance, Rousselle has repeatedly contended that the judge assigned to her case demonstrated bias against her by refusing to admit into evidence a police report that she had previously filed against Ward. While the record does indicate the court excluded the investigative police report referenced by Rousselle under Alaska Evidence Rule 803(8)(b)(i),[21] that is not all that occurred. Rousselle originally sought to include the report in an exhibit that contained numerous emails, statements, and case filings. The court admitted most of the documents in this exhibit, including a 17-page handwritten affidavit Rousselle had sent to the Anchorage Police Department while her case was being investigated, despite numerous objections from opposing counsel. Rousselle's affidavit provided a detailed narrative account of the abuse allegations contained in the investigative police report. The portions of the exhibit the court excluded consisted purely of hearsay or were protected by attorney-client privilege. Moreover, the court

---

[19]    *See Griswold v. Homer City Council*, 310 P.3d 938, 941 n.6 (Alaska 2013) (reviewing whether, under circumstances of particular case, "reasonable people would question the judge's ability to be fair").

[20]    *See Greenway v. Heathcott*, 294 P.3d 1056, 1062 (Alaska 2013).

[21]    *See* Alaska R. Evid. 803(8)(b)(i) (excluding "investigative reports by police and other law enforcement personnel" from exception to hearsay rule).

carefully explained the reasoning behind its evidentiary ruling in this instance and in others, and it thoroughly assessed the relevance and admissibility of evidence proffered by both parties. This approach toward the evidence was emblematic of the court's overall approach at trial: explanatory, considerate, even-handed, and guided by the law and evidence. The record is devoid of any sign of bias.

We further note that many of Rousselle's complaints about the court's substantive rulings appear to be based on deep-seated disagreement with its weighing of the statutory best interest factors. However, judicial bias cannot "be inferred merely from adverse rulings."[22] Rousselle's allegations of bias are therefore without merit.

For the same reasons, the superior court did not abuse its discretion in denying Rousselle's motion for recusal or disqualification. Indeed, we note that judges have an important obligation not to disqualify themselves when there is no valid reason to do so.[23]

## V.    CONCLUSION

For the reasons stated above, we AFFIRM the superior court's decision in all respects.

---

[22]    *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015).

[23]    *Amidon v. State*, 604 P.2d 575, 577 (Alaska 1979).